Booth, Respondent, vs. Frankenstein, Administratrix, Appellant.

*October 11—November 9, 1932.*

For the appellant there was a brief by *Fisher, Cashin & Reinholdt* of Stevens Point and *Fred Arnold* of Eau Claire, and oral argument by *R. T. Reinholdt*.

For the respondent there was a brief by *Clarence E. Rinehard* and *Robert L. Wiley*, attorneys, and *Henry Christoffersen* of counsel, all of Chippewa Falls, and oral argument by *Mr. Christoffersen* and *Mr. Wiley*.

WICKHEM, J.   Defendant's first contention is that the evidence does not sustain the finding of the jury that deceased was negligent.   This requires an examination of the facts.   The collision occurred about six o'clock in the evening of January 30, 1931.   The plaintiff was driving his Chevrolet truck in a southerly direction on state trunk highway 29, a short distance south of Stanley.   The deceased was driving his Oldsmobile coupe in a northerly direction on this highway.   Plaintiff's truck was equipped with a platform eighty-two inches wide, which extended ten inches beyond the wheels and was not equipped with clearance lights.   The headlights of both cars were lighted.   The road was straight for a considerable distance on either side of the place of the

collision. At the time plaintiff first observed the deceased's car, that car was traveling on its own proper side of the roadway, and plaintiff observed nothing irregular or careless about the deceased's manner of driving. Plaintiff testified that the deceased's car invaded his side of the road very suddenly. The left front tire of deceased's car was flat after the accident, and one witness stated that the tube was blown out. This is a sufficient outline of the facts to make understandable the character of defendant's attack upon the finding of negligence.

Defendant's contention is that, at most, the evidence merely shows an unexplained invasion by deceased upon the plaintiff's side of the road; that there is evidence that the left front tire of deceased's car was blown out; that there is a strong presumption that the deceased used due care for his own safety, and that the jury was compelled either to accept the hypothesis of the blowout as a cause of the accident, as in *Seligman v. Hammond,* 205 Wis. 199, 236 N. W. 115, or to conjecture or guess as to the explanation for deceased's presence on the wrong side of the road. It is further claimed that the *Seligman Case* is squarely in point and supports defendant's contention. In the *Seligman Case* the car of deceased swerved suddenly to the wrong side of the road, so sharply that the right side of deceased's car struck that of plaintiff's. There was a blowout of the left front tire of deceased's car, although there was no physical impact to account for it. The jury found the deceased free from negligence, and this court held that there was enough evidence, in view of the law, to warrant the jury in coming to that conclusion.

This is quite a different case. Here the jury came to the opposite conclusion, and we think it was permissible for them to do so. It was recognized in the *Seligman Case* that the mere operation of a car upon the wrong side of the highway makes at least a *prima facie* case of negligence and is enough,

in the absence of an explanation which the jury is bound to accept, to warrant a conclusion of negligence on the part of its operator or driver. In view of the fact that the alleged blowout was of a tire that came into actual contact with the plaintiff's car, the jury was certainly not compelled to accept this as the explanation of the accident. Nor does the presumption that the deceased used due care for his safety destroy, as a matter of law, the inference arising from the presence of the deceased upon the wrong side of the highway. This inference is a genuine inference of fact, and is sufficient to rebut the presumption of due care on the part of the deceased. We have come to the conclusion that the jury was entitled to find that the presence of deceased's car on the left side of the highway constituted negligence on his part.

The next contention of the defendant is that upon the evidence plaintiff was guilty of negligence as a matter of law. Defendant's first contention was based upon the concession, for purposes of argument, that the deceased did invade plaintiff's side of the road. This contention is based upon the claim that plaintiff in fact was driving to the left of the center of the road, and that the accident happened just as plaintiff was in the act of trying to swing back to the right side of the highway. Since plaintiff testified positively to the effect that he was driving on his own side of the highway, and that the deceased was not, there was clearly a jury question unless plaintiff's testimony was so contrary to the physical facts as to fall within the doctrine of *Stryk v. Sydarowich,* 198 Wis. 542, 224 N. W. 479; *Samulski v. Menasha P. Co.* 147 Wis. 285, 133 N. W. 142. Defendant's argument that the physical facts are consistent only with the conclusion that plaintiff was on the wrong side of the highway at the time of the accident is based upon an elaborate analysis and interpretation of the various dents, scratches, and marks left upon the two cars by the impact of the collision. No useful service will be performed by a detailed discussion here of this contention. We conclude that while inferences favorable to

defendant may be drawn from an examination of this data, it is by no means conclusive as to the location of the cars at the time of the accident, and if it is not, it was within the jury's province to accept plaintiff's testimony.

The next contention of the appellant is that since deceased was instantly killed in this collision, by the very act which is alleged to have created a cause of action in the plaintiff, no cause of action against the deceased ever existed in his lifetime, and that the survival statute does not apply. In order for a cause of action to arise, it is contended that there must exist at the same time a person to whom a duty is owed, a person owing the duty, and some act constituting a breach of that duty. It was the rule at common law that there could be no cause of action for death by wrongful act because the event that would normally create a cause of action destroyed the person in whom the cause of action must necessarily be created. To obviate the injustice resulting from this rule, statutes creating a cause of action for death by wrongful act have been generally adopted. It is now argued that the same principle applies to the deceased; that the deceased was destroyed by the very act that is alleged to have constituted a tort; that no cause of action existed against him in his lifetime; that there was nothing to survive, and that there is no statute creating a cause of action against his estate. This contention is ably defended and difficult to answer on principle. However, we do not find it necessary to decide, and we do not decide, whether the principle contended for is valid. While in this case the proof is that the death of the deceased probably followed instantly the blow that crushed his skull, it does not follow that his death antedated a cause of action in the plaintiff. Certainly his negligent act preceded his death, and certainly the impact and some damage to plaintiff's car also preceded it.

Under these circumstances a cause of action existed in plaintiff prior to the death of deceased. While it probably is a matter of speculation whether plaintiff's personal injuries

antedated the death of deceased, we consider the determination of this question to be immaterial. The question whether a single tortious act, which causes injury to the person and property of the plaintiff, gives rise to a single cause of action or to two separate causes, is one upon which there is a sharp conflict of authority. The majority rule is that in such a situation a single cause of action arises with separate items of damage. *King v. Chicago, M. & St. P. R. Co.* 80 Minn. 83, 82 N. W. 1113, 50 L. R. A. 161; *Braithwaite v. Hall,* 168 Mass. 38, 46 N. E. 398. The English rule, followed by several of the state courts, is that damage to goods and injury to the person, although the result of the same wrongful act, infringe different primary rights and give rise to distinct causes of action. *Reilly v. Sicilian Asphalt Paving Co.* 170 N. Y. 40, 62 N. E. 772, 57 L. R. A. 176. (See 64 A. L. R. 663, for collation of cases.)

In the leading case of *King v. Chicago, M. & St. P. R. Co., supra,* the court took the position that the cause of action consists of the negligent act which produced the effect, rather than in the effect of the act in its application to different primary rights.

We have concluded that the majority rule is sound, and that, to adopt the phrasing of the Minnesota court, it is "more in harmony with the tendency towards simplicity and directness in the determination of controversial rights." It is not necessary to adopt the suggestion of the Minnesota court, that the cause of action consists of the negligent act, if that is the intended holding in the *King Case.* We think the primary right of the plaintiff in such a case as here presented is to be free from damage to person or property by reason of the negligent acts of others. We simply decline further to classify plaintiff's primary right, or to consider his rights to security of person to be distinct and separate from his right to the same security with respect to his property. When the

negligent act of the defendant culminates in damage to person or property, a cause of action is created in the plaintiff, and he may as an incident to his recovery have all the damages which proximately flow from the violation of his right. Hence we think that even though the death of the defendant's intestate occurred after the impact which damaged plaintiff's car and gave rise to a cause of action, but before plaintiff sustained personal injuries, plaintiff may have as damages all of the consequent injuries to his person.

Defendant finally contends that the record discloses several reversible errors. The first relates to an instruction of the court. The court instructed the jury that "the evidence indicates very strongly that someone was to blame for that collision. You will determine who it was, whether it was both drivers or one, and if so, which one." Later in the instructions the court said: "If each of the drivers had obeyed the law, no collision probably would have resulted. Who was to blame? Was one party to blame, and if so, which one? Or were they both to blame?" A somewhat similar instruction was condemned in *Zutter v. O'Connell*, 200 Wis. 601, 229 N. W. 74, and in the words of Mr. Justice OWEN in that case, "the statement . . . will not bear analysis" since it leaves no room for the jury to find that the collision was the result of an unavoidable accident. However, in view of our conclusions, hereafter set forth, it is not necessary to determine whether the instruction constituted prejudicial error.

The second objection is to an instruction that relates to defendant's failure to call as witnesses two persons who rode in the car with deceased. The instruction was as follows:

"You should also consider the failure of the defendant to call as witnesses the two persons who rode in the car of the deceased. It is true that either party might have subpœnaed those witnesses and produced them here. Ordinarily a person calls witnesses associated with them or with their side of the transaction, and if they fail to call them when it be-

comes a matter of dispute in court, their failure to call them is a circumstance against them, the weight of which is for the jury to consider."

This contention puts in question the inferences that are permissible from the conduct of a party to a suit.

"The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party. These inferences, to be sure, cannot fairly be made except upon certain conditions; and they are also open always to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure. But the propriety of such an inference in general is not doubted. The non-production of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause." 1 Wigmore, Evidence (2d ed.) § 285.

This inference is based not merely upon non-production, but non-production when it would be natural to suppose that the witness would have been produced if the facts known by him had been favorable.

Since the question relates to the inference of fact that may be drawn from the conduct of a party to the litigation, and since the permissible inference must vary with the facts, an examination of the facts is necessary. The two persons who were occupants of the deceased's car were, respectively, a woman who was the proprietor of the hotel at which deceased was living, and another passenger whose relation to the deceased does not clearly appear. It is respondent's contention that since one of the passengers was the proprietor of the hotel at which deceased was living, and since, in the course of a statement admitted as part of the *res gestæ,* she referred to

the deceased as "Dad," and since deceased's daughter-in-law was employed by her, there is an inference that she was friendly towards the decedent's estate. It is further contended that the second guest must also have been friendly or he would not have been riding with the deceased and another person in a one-seated car. It is our conclusion that while all of these contentions of the respondent might reasonably have been made before the jury as a part of counsel's argument upon the facts, it was error to give the instruction under examination. The witnesses were equally available to both parties; neither called them. Although there is room for a very weak inference of fact that the witnesses might have been more friendly to the deceased than they were to the plaintiff, there is no such showing of their relations with deceased as would warrant an inference against defendant that could not be drawn against the plaintiff. Three witnesses testified that the woman stated after the accident, "I told Dad all the time to stay on the right-hand side." If it means anything, this statement indicates that the witness thought that the accident happened through the fault of deceased, and the failure of plaintiff to call her would justify an inference against the plaintiff. In view of the conflicting and inconclusive character of the inferences, the instruction that the failure of the defendant to call as witnesses the two occupants of the car is a circumstance against her, the weight of which the jury is to consider, was prejudicially erroneous. Under the facts of the case, we think it was error to particularly direct this instruction against the defendant.

Objection is made to the admission of evidence that Mrs. Rathgaber made the statement heretofore referred to, immediately after the accident. It is claimed to be hearsay and not part of the *res gestæ*, for the reason that it relates to a fact prior to the accident rather than to the events which happened at the time of the accident. We think this objec-

tion is unsound. The statement is an implied declaration that deceased was not on the right side of the road at the time of the accident.

In view of the conclusion that the instruction, heretofore discussed, constituted prejudicial error, it follows that the judgment must be reversed and a new trial granted.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.