Hans J. Paulson, Administrator, Appellant, v. Bert Hanson et al., Appellees.

No. 44625.

April 4, 1939.

Wallace & Claypool, for appellant.

Hatter & Harned, for appellees.

Hale, J.—This is an action brought under the provisions

of section 5026-b1, Code 1935, which is the same as section 512 of chapter 134, Acts of the Forty-seventh General Assembly.

The accident for which damage is claimed occurred on March 22, 1937. The deceased Harold Paulson was riding in an automobile which was owned by the defendant Bert Hanson, and was being driven by the defendant Robert Hanson with the consent of the owner, defendant Bert Hanson. The accident occurred in the early hours of the morning, on primary road No. 6, east of Marengo. Defendant Robert Hanson had been to Cedar Rapids during the evening and had invited Harold Paulson, the deceased, to accompany him home to Williamsburg, where they both lived. In coming from Cedar Rapids they first traveled primary road No. 149 until it intersected with primary road No. 6. At a point immediately west of South Amana, apparently the defendant Robert Hanson fell asleep, and the automobile ran off the south side of the pavement and into a cement abutment of a bridge, which collision resulted in the death of Harold Paulson a short time thereafter on the same day.

The plaintiff's allegations of recklessness are four in number, only one of which, however, was submitted to the jury. The defendants, in answer to the charges of recklessness, entered a denial thereto, and under the issues thus made trial was had. At the conclusion of plaintiff's testimony, and also at the conclusion of all the evidence, defendants' motion for a directed verdict was overruled and the cause was submitted to the jury, who returned a verdict in favor of the defendants. Plaintiff's exceptions to instructions and motion for new trial being overruled, plaintiff appeals from the final judgment entered and from such overruling of exceptions and motion for new trial.

The statute heretofore referred to (section 5026-b1, Code 1935) is as follows:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

There is no dispute that the deceased Harold Paulson was

a guest, and that the defendant Robert Hanson, driver of the car, would be liable only for recklessness.

It may be well to review the record in regard to the overruling of defendants' motion for a directed verdict. This motion was based on several grounds—that the plaintiff failed to establish that either defendant was guilty of recklessness, and that it would be the duty of the court in the event of a verdict for plaintiff to set such verdict aside; and, among other grounds, that there was no evidence to establish any recklessness. While this motion was overruled by the court, we are inclined to believe that, under all the evidence submitted, the court would have been justified in sustaining the motion.

As we have often held, the guest statute is an exception to the rule as to liability for negligence. See Shenkle v. Mains, 216 Iowa 1324, 247 N. W. 635; Sullivan v. Harris, 224 Iowa 345, 276 N. W. 88.

Recklessness goes beyond mere negligence and has often been defined, and was so defined in the instructions in this case. It means proceeding without heed of or concern for consequences, and must be such as to manifest a heedless disregard for or indifference to the rights of others. In the case at bar there is no question of intoxication; and it is not seriously argued that, under our previous holdings, the mere act of falling asleep constitutes recklessness. Kaplan v. Kaplan, 213 Iowa 646, 239 N. W. 682; Shenkle v. Mains, supra; Knutson v. Lurie, 217 Iowa 192, 251 N. W. 147. Nor does the plaintiff urge that the acts of the driver while asleep, or after being overcome by sleep, would constitute recklessness; but his claim is that the defendant driver, knowing that he was sleepy, continued to drive the car, and that, with such knowledge, in continuing to drive he was reckless.

The Kaplan case, supra, has often been cited in this court and in courts of other states, and, while the statutes differ in the various jurisdictions, yet it has frequently been held as a correct statement of the law. Several cases cited by defendants refer to the Kaplan case with approval. One case, Pickering v. Stearns, 182 Wash. 234, 46 P.2d 394, criticizes the case, or, rather, some of the expressions in the case. But the Kaplan case goes further than the mere falling asleep. Quoting from that case [213 Iowa 653, 239 N. W. 685]:

"But the appellant argues that the father was reckless for going to sleep or permitting himself to be overcome by sleep. While he may have been negligent, this does not constitute recklessness within the meaning of the statute. [Citing Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46.]

" * * * The fact that he was tired and facing the east sun and went to sleep cannot and does not raise any negligence there may have been in said act to the level of recklessness. IIis unconscious conduct while asleep, or semiconscious conduct while going to sleep, or the mere fact that he permitted sleep to overcome him, do not evince a heedless disregard of the rights of the daughter."

In the case of Duncan v. Lowe, 221 Iowa 1278, 1282, 268 N. W. 10, 12, decided in 1936, the Kaplan case is referred to and reviewed, and we quote from the opinion of the court in that case:

"In the case at bar there is no evidence the driver was asleep unless it be she 'just sort of lost herself for perhaps a second.' If this means she started to fall asleep, or even momentarily was asleep, the culpability, if any, was of no greater degree than in the Kaplan case. That defendant may have 'lost herself for perhaps a second' is the only evidence from which it could be found that any weariness affected or lessened her ability to properly operate the car. Finding no distinguishing circumstances we are of opinion the holding in the Kaplan case determines that the element of weariness in the case at bar did not raise the possible negligence to the level of recklessness."

In the above case the evidence indicated that the car was being operated on a straight, level, and unobstructed paved road, at a speed of fifty miles per hour, by a person who was somewhat weary from loss of sleep and somewhat unnerved by an accident happening earlier in the day, and that the car swerved and overturned, notwithstanding the efforts of the driver to control it.

It was held that, following the Kaplan case, there was no jury question made on the issue that the automobile was recklessly operated.

In the present case the facts indicate that, for a time at least, the defendant Robert Hanson had given way to sleep, but

there is little evidence to support the claim that he was conscious of the approach of sleep. This defendant had had a full night's rest the night before; he was apparently in good condition; and the evidence fails to disclose that he was under any strain or in a nervous condition.

Taking the evidence in the aspect most favorable to plaintiff's claim, the testimony which might tend to support his view is that of two persons—the witnesses Fryauf and Westholm. The former testified to a statement made by the defendant Robert Hanson. The witness first testified that Robert said that ''the only thing he remembered was that he must have fell asleep, and hit the bridge,'' and that was all he remembered hearing him say. On being recalled, however, the witness contradicted his first evidence to the extent that he had heard Robert make the remark that he ''become drowsy and a little sleepy, and that he was driving along for those three or four miles, and that he must have fell asleep and the only thing he remembered was when Paulson nudged him and said 'Watch out.' '' This witness had previously, however, in a written statement on March 29, 1937, stated that the only remark he heard of any importance was, ''I guess I fell asleep.''

The testimony of Westholm is of much the same character. He stated that Robert had said that after Mr. Paulson fell asleep he drove around forty-five or fifty miles at the same speed, and did not remember anything until Mr. Paulson nudged him, and then they hit the bridge. The witness then said that later he told the story over and that he (Robert) said he was sleepy and that he did not know what he was doing until Mr. Paulson nudged him. This witness also, in answer to a letter of defendants' attorneys, on March 29, 1937, stated, as to the statements of the driver:

''On the trip homeward, the driver had fallen asleep and ran into the bridge. This is all he could remember until he started looking for help.''

The trial of this cause was in the January term 1938, but these previous statements were made within a week after the occurrence of the collision on March 22, 1937.

While we are endeavoring to consider the evidence in the light most favorable to plaintiff, yet we must take into consideration the entire evidence of the witnesses upon which he relies.

It is also true that these statements alleged to have been so made are entirely denied by the defendant driver Robert Hanson, and he is supported in his denial by other witnesses who were present at the time. It was a time of considerable excitement, and no one could expect that any witness could give an absolutely perfect account of what was said and done at a time shortly after the accident.

In addition to this evidence of parties who arrived shortly after the occurrence of the accident, plaintiff introduced expert evidence. Dr. Ruckmick testified as to the effect of approaching sleep. The substance of this testimony was that there are symptoms or signals which the individual ordinarily recognizes, and that in most cases the individual can determine when sleep is approaching, which is common knowledge. The experts agreed that before the period of unconsciousness of sleep there is a diminished type of consciousness.

It would extend this opinion unduly to set out the evidence to a greater extent, but the foregoing indicates the general character of the testimony upon which plaintiff relies to establish recklessness.

The question, then, is: Was the evidence, in its most favorable aspect, sufficient to warrant the court in submitting the case to the jury, or in permitting a verdict based in general on the testimony to stand? We think our court has held to the true rule heretofore that to constitute recklessness there must be shown a conscious disregard of the rights of others, and we are inclined to the view that under the evidence, in its most favorable light to the plaintiff, there would not be a conscious or willful disregard of consequences or the rights of others to reach the degree of recklessness required under the statute.

II. If the court should have directed a verdict at the completion of plaintiff's testimony or at the conclusion of all the testimony, would any subsequent rulings or orders made in the case be error such as could be relied upon by the plaintiff to authorize the granting of a new trial? Our court has held directly on this question in many instances. In a case cited by the plaintiff, Mulroney Mfg. Co. v. Weeks, 185 Iowa 714, 717, 171 N. W. 36, 37, this court, in an opinion by Evans, J., made the following statement:

"'We think it clear, therefore, that the plaintiff was entitled

to a directed verdict, though it did not ask for one. Having obtained its verdict from the jury, it may defend the same on the same grounds upon which it might have demanded a directed verdict. The fact that it was entitled to a directed verdict renders errors as to other issues nonprejudicial."

The same question recently came before this court in the case of Comparet v. Metz Co., 222 Iowa 1328, 1330, 271 N. W. 847, wherein the court said:

"It is the settled rule of law in this state that if plaintiff has failed to establish the material allegations of her petition by a preponderance of the evidence, or if the trial court should have sustained defendant's motion for a directed verdict for such reason, then subsequent errors upon other grounds are not prejudicial." Citing the above Mulroney case, and various others.

III. The determination of these questions renders it unnecessary to consider other assignments of error, such as the failure to submit the question of speed, and the claimed error in the so-called coercive instruction.

Since we believe that under the evidence, following the holdings of the court in similar cases, a verdict for the plaintiff could not stand, that the court should have directed a verdict for the defendants, and that the verdict was in conformity with the evidence in the case, we see no reason to disturb the verdict; and the case is, therefor, affirmed.—Affirmed.

HAMILTON, RICHARDS, SAGER, STIGER, BLISS, OLIVER, and MILLER, JJ., concur.