WEBER (Marvin), Appellant, vs. MAYER, Administratrix, and another, Respondents. [Case No. 191.]

WEBER (Richard) and another, Appellants, vs. MAYER, Administratrix, and another, Respondents. [Case No. 192.]

MAYER, Administratrix, Respondent, vs. WEBER (Richard) and others, Appellants. [Case No. 193.]

MAYER and another, Respondents, vs. WEBER (Richard) and others, Appellants: NORTHWESTERN NATIONAL CASUALTY COMPANY, Impleaded Respondent. [Case No. 194.]

*February 4—March 2, 1954.*

244

For the appellants Marvin Weber, Richard Weber, and the Western Casualty & Surety Company there was a brief by

*Bender, Trump, McIntyre, Trimborn & Godfrey* of Milwaukee, and for Richard Weber and the Hartford Fire Insurance Company by *Wolfe, O'Leary & Kenney* of Milwaukee, and oral argument by *R. E. McIntyre, Kneeland A. Godfrey,* and *Zelotus F. O'Leary.*

For the respondents Audrey C. Mayer, as administratrix, and the Northwestern National Casualty Company there was a brief by *Quarles, Spence & Quarles,* and oral argument by *Richard S. Gibbs,* all of Milwaukee.

For the respondents Audrey C. Mayer, Gladys Auer, and Audrey C. Mayer, as administratrix, there was a brief by *Becker, Kinnel, Doucette & Mattison* of Milwaukee, and oral argument by *Carl R. Becker.*

CURRIE, J. The appellants on this appeal contend that there was credible evidence to sustain the findings of the jury that Holzhauer was guilty of causal negligence in the operation of the Pontiac automobile both as to lookout, and management and control, and therefore it was error for the trial court to have changed the answers in the special verdict so as to relieve Holzhauer of all causal negligence and place 100 per cent of the negligence upon Marvin Weber.

Respondents, on the other hand, deny that there was any credible evidence upon which the jury could have based their findings of causal negligence as to Holzhauer. Respondents further contend that if this court should determine that it was error for the trial court to have changed any of the jury's answers to the special verdict, the respondents are entitled to a new trial because: (1) Marvin Weber was guilty of negligence as to failure to keep a proper lookout as a matter of law; and (2) there was error in the instructions of the trial court.

As Holzhauer entered the intersection his eastward view was limited to approximately 325 feet because of a hill rising to the east, the crest of which hid traffic approaching to the

east of said crest. The collision occurred in the northwest quadrant of the intersection. The photographs of the vehicles taken immediately after the accident would indicate that the point of impact as to the Pontiac was at least partially from the front. The entire right side of the Pontiac was also crushed, indicating that after the initial impact the Pontiac was sideswiped by the truck. The photographs of the truck indicate the point of initial impact to have been the left front fender, apparently more from the side than the front, but the left front headlight was demolished. Although the Pontiac was thrown or traveled a distance of 115 feet after the accident, ending up in the ditch on the north side of the Silver Spring road to the west of the intersection, there was no evidence that it struck any post or other obstruction after the accident. On the other hand, the truck did shear off a post after the accident, so that it is impossible to determine which damage to the truck was done by the initial impact of the two vehicles and which was due to the shearing off of the post.

Marvin Weber testified that some distance to the east of the crest of the hill he was proceeding at a speed of 40 to 45 miles per hour, but that as he came over the crest of the hill his speed was that of 30 to 35 miles per hour. He further stated that as he was coming down the hill and he was 200 feet from the intersection a dog ran out from the north side of the road and he applied his brakes to avoid hitting him, which had the effect of reducing his speed, but that he did not strike the dog and that his speed was 35 to 40 miles per hour at the time he entered the intersection and at the time of impact. He claims that when he was 150 feet from the corner of the fence around the cornfield he looked for traffic on Highway Y but could not see any because his vision was obscured by the cornfield, trees, and bushes. He made a second observation when he was 50 feet from the corner of the fence, at which point he testified that he could see about

two car lengths on Highway Y but saw no vehicle within that distance. Just a second before the impact occurred he saw a "flash" out of the corner of his eye which was the Holzhauer car. The front of the truck was then a "couple feet beyond the center of the intersection." The truck was proceeding on the north or right half of the highway. He does not know how far the Holzhauer car was from his truck when he first saw it, but only a fraction of a second elapsed before the impact occurred. According to his testimony, he first saw the Holzhauer car when it was on his left side and running into his left front fender. However, he does not recall the impact or anything that happened thereafter at the point of collision, as the next thing he remembered was receiving treatment in the hospital.

The only other person who claims to have been an eyewitness to the accident is Lester Borchardt. Borchardt, on the morning of the accident, was driving his own car east on the Silver Spring road. He claims that he first saw the Weber truck from the top of the hill to the west of the intersection when his own car was three fourths of a mile from the intersection and the truck was one mile to the east of the intersection, so that the distance of the truck from him was then one and three-fourths miles. Borchardt proceeded down the hill in front of him and thereafter crossed a small bridge and brought his own car to a stop half way on the shoulder and half way on the asphalt pavement just beyond the bridge and about 375 feet west of the intersection. At that time he had only seen the Weber truck approaching and had not seen the Pontiac coming from his right on Highway Y. His explanation of why he brought his own car to a stop was "I had it in my heart there was going to be an accident, the truck was ready to come over the crest of the hill any minute," referring to the crest of the hill or knoll 325 feet east of the intersection. After so coming to a stop Borchardt saw the Pontiac approaching from the south on

Highway Y. He stated that the Pontiac came to a stop 12 feet north of the arterial stop sign and thereafter very slowly entered the intersection and started to make a turn to the left or west and that the front of the Pontiac was already in the northwest quadrant of the intersection when the truck first came over the crest of the hill to the east. Borchardt estimated the speed of the truck to be from 55 to 60 miles per hour and stated that it was traveling on its own or north side of the highway. According to Borchardt, the front of the truck struck the right rear of the Pontiac back of the right rear wheel.

This testimony of Borchardt as to the point of original impact on the Pontiac is in direct conflict with the testimony of Marvin Weber who stated that the Pontiac, when he first saw it, was running into the left side of the truck. The photographs taken of the Pontiac immediately after the accident, while not conclusive, tend to corroborate the testimony of Marvin Weber rather than that of Borchardt.

One of the photographs taken at the scene of the accident shortly after it occurred shows, among other things, Borchardt's automobile parked on the south side of Silver Spring road just to the east of the bridge where he testified he had stopped before witnessing the collision. Mrs. Alvina Bartelt testified that prior to the accident she was driving an automobile west on Silver Spring road and that the Weber truck had passed her some distance back from the intersection with Highway Y. She further stated that she was the first person to arrive at the scene of the accident after it occurred and she looked westward from the intersection and that there was no car parked there between the intersection and the bridge. If believed by the jury, this testimony would tend to discredit that of Borchardt's.

In considering the question of whether there is credible evidence to sustain the jury's findings that Holzhauer was guilty of causal negligence with respect to lookout, and man-

agement and control, we start with the basic premise, that the decedent driver is presumed to have exercised due care in all respects including lookout and management and control, and that the benefit of such presumption remains until there is evidence introduced "establishing as a fact the negligence of the deceased." *Smith v. Green Bay* (1937), 223 Wis. 427, 429, 271 N. W. 28; *Ray v. Milwaukee Automobile Ins. Co.* (1939), 230 Wis. 323, 283 N. W. 799; *Vogel v. Vetting* (1953), 265 Wis. 19, 60 N. W. (2d) 399; *Feinsinger v. Bard* (7th Cir. 1952), 195 Fed. (2d) 45.

This court recently had occasion in *McCarty v. Weber* (1953), 265 Wis. 70, 60 N. W. (2d) 716, to consider the question of the quantum of evidence necessary to rebut such presumption. In that case the question before the court was whether a jury finding of causal negligence as to lookout on the part of a deceased driver was sustained by the evidence and this court declared (p. 73):

"All presumption of due care in lookout went out of the case when the evidence sufficient to support a contrary finding came in."

This court in *Prunty v. Vandenberg* (1950), 257 Wis. 469, 475, 44 N. W. (2d) 246, held that the presumption here under consideration can be overcome by inferences drawn from other evidence. The court in its opinion stated:

"It was held in *DeKeyser v. Milwaukee Automobile Ins. Co.* (1941), 236 Wis. 419, 427, 295 N. W. 755, that the presumption is one of fact and must yield to evidence establishing the contrary, and inference to the contrary may be drawn from the evidence showing the situation although the person against whom the negligence is charged be dead. In *Reichert v. Rex Accessories Co.* (1938), 228 Wis. 425, 438, 279 N. W. 645, physical facts and photographs were allowed to overrule the presumption."

In *Kilcoyne v. Trausch* (1936), 222 Wis. 528, 269 N. W. 276, Kilcoyne, one of the drivers of the two vehicles which

had collided at an intersection, was killed, and the jury found that he was not negligent as to lookout. In sustaining such finding this court stated (p. 537):

"However, as there was no direct evidence as to what he [Kilcoyne] in fact observed or failed to observe, and as to what his acts or omissions were in that particular respect, the determination of that issue was dependent wholly upon inferences, which it was within the province of the jury to draw from other facts and circumstances."

As we interpret the foregoing language, there can be no doubt but that if the jury had found Kilcoyne causally negligent as to lookout, such finding would not have been disturbed by this court.

What is the evidence in the instant case giving rise to. the reasonable inference that Holzhauer did not maintain a proper lookout as he entered the intersection which would sustain the jury's finding as to his failure to keep a proper lookout?

In the first place, there is Marvin Weber's testimony that when Weber came over the crest of the hill 325 feet to the east of the intersection his speed was about 30 to 35 miles per hour and that from then until the collision it did not exceed 40 miles per hour. The jury had the right to assume from the plat of the intersection in evidence that Holzhauer's car did not travel more than approximately 25 feet (Borchardt estimated such distance as not over 16 feet) from the point Holzhauer had stopped for the arterial until the point of impact. From these facts the jury had the right to conclude that the truck must have been well over the crest of the hill and in plain sight at the time Holzhauer entered the intersection, or at least when he reached the south line of the pavement. It certainly was Holzhauer's duty after stopping for the arterial not to enter the intersection until he had made an efficient observation as to traffic approaching from either

direction and particularly from his right. Marvin Weber further testified that when he first saw the flash, which was the Holzhauer car a fraction of a second before the impact, it was running into the left front fender of the truck. The truck was on its right, or north, side of the highway. All of this would indicate that Holzhauer had not seen the approach of the truck because there was no sudden turning by him of his car to avoid the accident, nor any application of brakes resulting in skid marks on the highway indicating any effort to stop.

Respondents argue that because the jury found Marvin Weber negligent as to speed the jury must have believed Borchardt's testimony as to his speed rather than his own. This does not follow at all because sec. 85.40 (2) (b), Stats.; requires the operator of a vehicle approaching an intersection to "operate at an appropriate reduced speed," and the jury might well have considered that even 35 miles per hour was too great a speed for Weber to have maintained in approaching the intersection having the obstructed view that this one did. Respondents further urge that the jury was required to accept Borchardt's testimony, that the front of Holzhauer's car had already entered the northwest quadrant of the intersection when the Weber truck came over the crest of the hill 325 feet to the east. However, if the jury disbelieved Borchardt's fantastic testimony, that he brought his own car to a stop before the truck had come over the crest of the hill (although he had seen it farther back on the plateau beyond when he himself was on the crest of the hill to the west) and before he had even seen the Pontiac at all, because he had felt in his heart that there was going to be an accident, the jury had the right to disbelieve his entire testimony or any part of it. Likewise, if the jury believed Mrs. Bartelt's testimony, that when she arrived at the scene of the accident Borchardt's car was not parked where he testified it had been

and from which position he claims to have observed the accident, the jury also might disregard his entire testimony if it chose to do so.

Respondents further maintain that the fact of the Pontiac being found after the accident 115 feet from the point of impact proves that the Weber truck must have been going at an excessive speed, thus corroborating Borchardt's estimate of 55 to 60 miles per hour. Even assuming that the force of the impact alone was responsible for the Pontiac traveling the 115 feet, it does not follow that the Weber truck must have been going at a speed in excess of 35 to 40 miles per hour as estimated by Marvin Weber. The truck weighed 15,000 pounds, and it is a well-known rule of physics that the force with which one moving object strikes another is its weight times its velocity (speed). In other words, a truck weighing 15,000 pounds and traveling at a rate of speed of 35 miles per hour would strike another vehicle with five times as much force as would a 3,000-pound passenger car traveling at the same speed.

In our opinion, the foregoing facts were sufficient to sustain the jury's finding that Holzhauer was causally negligent as to lookout. In both *McCarty v. Weber, supra,* and *Prunty v. Vandenberg, supra,* this court sustained findings by the jury of causal negligence as to lookout on the part of a deceased driver under circumstances where such findings rested upon reasonable inferences drawn from facts brought out in the evidence.

In searching the record for credible evidence to sustain the jury's finding, that Holzhauer was guilty of causal negligence as to management and control, we are unable to find any facts which would give rise to a reasonable inference that Holzhauer was negligent in such respect. As previously pointed out, Holzhauer did nothing in the operation of his car that indicated that he saw the approaching Weber truck

prior to the impact of the collision which might permit the jury to conclude that he did observe the approaching truck a sufficient time prior to the collision to have taken any effective measure to avoid the accident. Such finding is not supported by credible evidence if based upon mere conjecture and speculation. The burden of proof was upon appellants to establish that Holzhauer was guilty of causal negligence as to management and control, and appellants have failed to meet such burden. As this court stated in *Hyer v. Janesville* (1898), 101 Wis. 371, 377, 77 N. W. 729:

"To allow a jury to reach a conclusion in favor of the party on whom the burden of proof rests, by merely theorizing and conjecturing, will not do. There must at least be sufficient evidence to remove the question from the realms of mere conjecture."

In *Crawley v. Hill* (1948), 253 Wis. 294, 34 N. W. (2d) 123, plaintiff sought to recover damages for the wrongful death of her husband, Crawley, as a result of being struck by the automobile operated by the defendant Hill. The jury found Hill negligent as to speed, lookout, and management and control, but this court determined that such findings as to lookout and management and control were duplicitous, and stated (p. 298):

"This is not a case where after a failure of lookout ceased the defendant in the management of his car was guilty of negligent management and control. If he was at the time negligent as to lookout and therefore did not see Crawley running into the lane of traffic until in the exercise of ordinary care he could do nothing to avoid the accident, the sole negligence is in respect to lookout and not as to management and control."

The foregoing quotation seems particularly appropriate to the fact situation in the case at bar, and we conclude that the trial court rightly changed the jury's answers to the questions

in the special verdict relating to Holzhauer's management and control.

The changing of the answers to the questions in the verdict as to Holzhauer's management and control would affect the comparison of negligence so as to require that a new trial be had. This makes it unnecessary to pass on the question raised by respondents as to whether Marvin Weber was not negligent as to lookout as a matter of law because, even if respondents are correct in such contention, this would only provide an additional reason for requiring a new trial.

Respondents claim that the court erred in its charge to the jury in refusing to give an instruction requested by respondents' counsel as to Holzhauer's lookout, and also in giving the instruction which was given with respect to such lookout. The requested instruction which was refused read as follows:

"It is the duty of a motorist approaching an arterial highway to stop before entering upon an arterial highway at a place where an efficient observation may be had. A motorist so stopping his car before entering an arterial highway may enter and proceed upon the arterial highway if he has reasonable grounds to conclude that he might do so in safety.

"If you find from the evidence that the Holzhauer car stopped before entering the arterial highway at a point where the driver could see to the crest of the first hill to the east on Highway VV, then you must find that the Holzhauer car stopped at a place where an efficient observation could be made.

"If you find that the Holzhauer car entered and proceeded into the arterial highway before the Weber truck came over the crest of the first hill to the east on the arterial highway, you then must find that the driver of the Holzhauer car did have reasonable grounds to conclude that he could enter the arterial in safety. Under such circumstances, the driver of the Holzhauer car being able to see to the east 325 feet to the crest of the hill could properly assume that any vehicle, hidden to view east of the crest of the hill, would obey the law in reference to the speed and control of such vehicle, and that he could safely proceed into the intersection."

It will be noted that the first two paragraphs of such instruction relate to the questions in the verdict which inquired as to Holzhauer's failure to stop before entering an arterial highway. While we can perceive no error in such two paragraphs, respondents were not prejudiced by failure to give such instructions inasmuch as the questions in the verdict to which they related were answered in respondents' favor.

The third paragraph of the requested instructions apparently relates to the question in the verdict concerning Holzhauer's lookout. However, the giving of such third paragraph of the requested instruction without further qualification would be misleading. It would be likely to lead the jurors to conclude that, if Holzhauer looked to the crest of the hill 325 feet to the east before entering the intersection (which embraces the highway limits lying between the fence lines extended and not merely the paved portions of the two highways) and saw no vehicle coming, he could not be found negligent as to lookout even though he made no further observation to his right up until the time the two vehicles collided with each other. It is at least a jury issue as to whether the exercise of ordinary care did not require a further observation to be made by Holzhauer to his right before he placed his vehicle in the path of the oncoming truck. On this point, see *Lind v. Lund*, ante, p. 232, 63 N. W. (2d) 313.

The instruction actually given on lookout by the trial court was as follows:

"Lookout, subdivision (b) requires as to lookout, and you are instructed that it is the duty of a driver of an automobile to keep a reasonable lookout for other travelers upon the highway, and to exercise ordinary care with respect to the management and control of his automobile so that he may under the ordinary circumstances avoid colliding with and injuring other travelers upon the highway. One is bound to see that which is in plain sight and may not be heard to say

to the contrary. A driver cannot excuse himself from his duty by saying that he looked and did not see, when, as a matter of fact, he would have seen an approaching automobile if he had looked. Under the circumstances it is assumed that he did not look or that he plunged heedlessly ahead regardless of the hazard and consequences."

We can perceive no error in such instruction. The facts in evidence fully warranted instructing the jury to the effect that a driver who looks and fails to see what is in plain sight may not be heard to say that he maintained a proper lookout.

In view of the fact that the jury found both drivers negligent, and we have sustained the finding as to Holzhauer's negligence with respect to lookout, we have given consideration to the question of whether the judgments in any of the four actions could be affirmed inasmuch as a new trial is necessary only as to those causes of action in which the comparative negligence of the two drivers is material.

In Case No. 191, Marvin Weber seeks to recover for his personal injuries; in Case No. 192, Richard Weber and the Insurance Company carrying his collision insurance seek to recover for the damages to the truck; in Case No. 193, the administratrix of Holzhauer's estate seeks to recover for the damages to Holzhauer's Pontiac automobile; and in Case No. 194, the two daughters of Holzhauer seek to recover damages for the wrongful deaths of their father, mother, and sister, all of whom were killed as a result of the accident. The comparative negligence of the two drivers is material in Cases No. 191, No. 192, and No. 193, and as to one of the three causes of action set forth in Case No. 194, viz., that for the wrongful death of Holzhauer. The funeral expenses for Mrs. Holzhauer, and the daughter who was killed in the accident, were stipulated, and the jury found no damages for pecuniary loss. The judgment entered in Case No. 194 was for a single amount covering all three causes of action. Inasmuch, therefore, as comparative negligence is material as to one of

the causes of action in Case No. 194, and the only damages allowed in the other two causes of action in such case were for stipulated amounts, we deem it advisable to order a new trial as to all causes of action in Case No. 194, as well as in the other three cases.

*By the Court.*—Judgments reversed and causes remanded for a new trial consistent with this opinion.