THEISEN, by Guardian *ad litem,* and another, Respondents, v. MILWAUKEE AUTOMOBILE MUTUAL INSURANCE COMPANY, Appellant.*

*October 2—November 27, 1962.*

* Motion for rehearing denied, without costs, on February 5, 1963.

For the appellant there were briefs by *Hale, Skemp, Hanson, Schnurrer & Skemp* of La Crosse, and oral argument by *T. H. Skemp* and *William P. Skemp*.

For the respondents there was a brief by *Fugina, Kostner & Ward* of Arcadia, and oral argument by *LaVern G. Kostner*.

HALLOWS, J. This is a case of a sleeping driver. On the evening of November 16, 1960, the plaintiff and Shepherd participated in the Arcadia high school senior class play in which Shepherd had the leading role. The play was over about 10:15. The members of the cast and those associated with the production, numbering in all about 30, were invited to a party at the home of Alfred Service, father of one of the members of the cast. Service lived about seven miles west of Arcadia on Highway 95. After the play, the young folks went to a cafe in Arcadia, then to a dance hall and danced, and about midnight started for the Service home. Upon arriving there, the girls prepared a lunch. The party then went on a hayride for about an hour, and upon returning to the house, played the piano, danced, and talked. Shepherd brought a fifth of liquor to the house. At the party, beer or sloe gin, or both, were consumed, but there is no evidence anyone became intoxicated. Some of the girls testified the liquor could not be felt or not very much, or made them tired or sleepy or drowsy. The only evidence concerning Shepherd's drinking is by one of the girls who said she saw him with a drink in his hand.

About 3 a. m. the party broke up and five girls, including the plaintiff, got into Shepherd's car for the ride home. The plaintiff sat in the rear left seat. These girls testified they were tired and one stated the car was warm which just naturally made them drowsy. About four miles from the Service home the Shepherd car, as it was traveling east toward Arcadia on a straight, level stretch of Highway 95, gradually veered from its right lane to the left lane and onto the shoulder of the road. At this time, at least all the girls were asleep or dozing. When the car left the pavement, one of the girls in the front seat woke up and shouted, "Louis, look out," but there was no reaction; she thought Louis was asleep. Another girl hollered, "Louie," but Shepherd did not move. The car proceeded on its course 270 feet until it hit a large tree stump on the north side of the road about 10 feet from the edge of the blacktop.

The defendant contends Shepherd's going to sleep was an unknown physical impairment which caused him to lose control of the car and, consequently, could not constitute negligence. The gist of the argument is Shepherd went to sleep unknowingly from physical exhaustion and the case should be governed by the principles applicable to sudden, unforeseen physical disability over which a driver has no control, such as being the victim of a heart attack, epileptic seizure, or other loss of consciousness which is sudden and unforeseen. Arguendo, it may be stated acts done while one is asleep are not voluntary and in and of themselves do not constitute negligence. *Bushnell v. Bushnell* (1925), 103 Conn. 583, 131 Atl. 432. See also *Steele v. Lackey* (1935), 107 Vt. 192, 177 Atl. 309; *Kaplan v. Kaplan* (1931), 213 Iowa 646, 239 N. W. 682 (recklessness). The basis, however, for liability of the sleeping driver is his negligence in falling asleep.

Normally no harm will be done if one falls asleep reading the newspaper after dinner or this opinion. In the horse-and-buggy days, one might have fallen asleep while driving and the horse quite likely would have had enough horse sense to stop or even to take the driver home, through habit and instinct, quite safely. But falling asleep behind a wheel of an auto propelled by 200 or 300 mechanical horses having no horse sense is entirely a different matter in terms of one's duty to others. We recently pointed out [1] the increase in the frequency and in the seriousness of the consequences of automobile accidents today resulting from modern, high-powered vehicles. The increase in risks and hazards of driving an automobile on public highways demands greater skill and attention than forty years ago. When one is under a duty to use care not to injure another, he cannot fulfil the duty by falling asleep.

We must approach a sleeping-driver case on the premise the driver has the duty to stay awake while he drives and it is within his control either to stay awake, to cease driving, or not to drive at all when sleepy. Up to now no decision has gone beyond the limits of the well-established rule that the fact the driver of an automobile goes to sleep while driving is a proper basis for an inference of negligence sufficient to make a *prima facie* case and to support a verdict for recovery if no circumstances tending to excuse or justify such conduct are proven. This problem is the subject of an extensive annotation, Automobiles—Illness or Drowsiness, 28 A. L. R. (2d) 12. In *Krantz v. Krantz* (1933), 211 Wis. 249, 248 N. W. 155, this court recognized that rule and relied on the leading case of *Bushnell v. Bushnell, supra,* which sets forth a medical basis for the

---

[1] *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. (2d) 374, 113 N. W. (2d) 14.

rule. The inference of negligence which arises from "sleeping at the wheel" is based on the judicial recognition that sleep ordinarily does not occur without some notice and to fall asleep while driving is the usual result of negligence in failing to heed the warning. See, for medical and psychological theories of the nature of sleep, *Kaplan v. Kaplan, supra; Paulson v. Hanson* (1939), 226 Iowa 858, 285 N. W. 189, and *Rice-Stix Dry Goods Co. v. Self* (1935), 20 Tenn. App. 498, 101 S. W. (2d) 132.

Whatever the medical and scientific basis may be for the inference, we find no justification in the common experience of mankind for one's falling asleep with his foot on the accelerator, his hands on the wheel, and his auto transformed into an instrument of destruction. The process of falling asleep—normal and healthy sleep—is a matter of common experience and usually attended by premonitory warnings or is to be expected. Such warnings or reasonable expectations of sleep are especially accentuated when one is conscious of his duty to stay awake while driving and the failure to heed such warnings and permitting oneself to fall asleep while driving an automobile must be deemed negligence as a matter of law. If while driving a car one is in such a state of exhaustion that he falls asleep without any premonitory warning, he is chargeable with the knowledge of any ordinarily prudent man that such exhaustion is reasonably likely to cause sleep while driving. *Wisconsin Natural Gas Co. v. Employers Mut. Liability Ins. Co.* (1953), 263 Wis. 633, 58 N. W. (2d) 424. Although it has been argued the liability of a sleeping driver should be absolute on the grounds of an extrahazardous activity,[2] we do not base our decision on that ground but hold that falling asleep at the wheel is negligence as a matter of law because no facts can

[2] The Case of the Sleeping Motorist, 25 New York University Law Review (1950), 362.

exist which will justify, excuse, or exculpate such negligence. The language in earlier Wisconsin cases that falling asleep while driving may be excusable is overruled.

We exclude from this holding those exceptional cases of loss of consciousness resulting from injury inflicted by an outside force or fainting or heart attack, epileptic seizure, or other illness which suddenly incapacitates the driver of an automobile and when the occurrence of such disability is not attended with sufficient warning or should not have been reasonably foreseen. When, however, such occurrence should have been reasonably foreseen, we have held the driver of a motor vehicle negligent as a matter of law, as in the sleep cases. *Eleason v. Western Casualty & Surety Co.* (1948), 254 Wis. 134, 35 N. W. (2d) 301 (epilepsy); *Wisconsin Natural Gas Co. v. Employers Mut. Liability Ins. Co., supra.* Likewise, in *Krueger v. Krueger* (1929), 197 Wis. 588, 222 N. W. 784, decided before implied assumption of risk was abolished, we held a guest assumed the risk as a matter of law of the driver's falling asleep when the guest had knowledge of the driver's condition and sleep was reasonably to be expected.

The party claiming the driver fell asleep while driving has the burden of proving the driver, in fact, fell asleep. If the evidence, whether direct or by permissible inference, tends to establish the fact, such evidence casts a burden upon the party seeking to excuse the driver's loss of consciousness—the burden of showing the greater probability that the loss of consciousness is excusable on some nonactionable basis.

The trial court excluded an offer of proof made by the defendant which would have shown Shepherd was not a habitual user of alcoholic beverages and was physically exhausted from the loss of considerable sleep for some six weeks prior to the accident practicing for the play, getting

to bed later than his normal bedtime, and continuing his usual farm chores. It was not error of the trial court to reject this evidence offered to prove a justification for going to sleep. On the contrary, such proof would have tended to show Shepherd should have known, as a reasonably prudent man, he was likely to have fallen asleep. Such offer of proof, of course, is immaterial under our holding that falling asleep while driving is negligence as a matter of law.

The defendant contends Shepherd was entitled to an instruction on the presumption of due care accorded a deceased party, relying on *Seligman v. Hammond* (1931), 205 Wis. 199, 236 N. W. 115. Later cases have not followed the strong language of that case which characterized the presumption as very substantial and, although not constituting affirmative evidence that due care was exercised, as requiring proof to the contrary in order to remove its persuasive force. This presumption is a limited one, is not evidence, and is sufficient only to place upon the other party the risk incidental to a failure to come forward with such testimony as may be in his control. It involves no rule as to the weight of the evidence necessary to meet it. *Fiedler v. Kapsa* (1949), 255 Wis. 559, 39 N. W. (2d) 682. This court is committed to the doctrine that when evidence is introduced which would support a jury finding contrary to the presumption, the presumption is eliminated and drops out of the case entirely and no instruction to the jury should be given upon the subject. *Atkinson v. Huber* (1955), 268 Wis. 615, 68 N. W. (2d) 447. See also *Evjen v. Packer City Transit Line* (1960), 9 Wis. (2d) 153, 100 N. W. (2d) 580; and *Weber v. Mayer* (1954), 266 Wis. 241, 63 N. W. (2d) 318.

Although in the defendant's brief an argument is made the cause of Shepherd's conduct in operating the car rested on speculation, this case was tried and argued on the basis

Shepherd fell asleep from physical exhaustion. The only reasonable inference from the evidence is that Shepherd did fall asleep. There is no evidence of any other cause. The other occupants who had participated in the events of the night and early morning preceding the accident fell asleep. We have no sudden turning of the car to the wrong side of the highway or of a mechanical defect which might have explained the presence of the car on the wrong side of the road and traveling off the highway. The distance from the position of Shepherd's automobile in its right lane on the highway when it began to veer to the left to the point of impact with the tree stump was approximately 500 feet. There is no testimony of a fainting spell, or an epileptic seizure, or any other unanticipated mental or physical condition of Shepherd which would cause him to lose consciousness other than falling asleep.

The defendant also contends the operation of the car on the wrong side of the highway is not sufficient to rebut the presumption of due care accorded the deceased or to overcome it. Traveling on the wrong side of the road and onto the shoulder in a straight line for almost a distance of 500 feet, with no explanation other than the driver was asleep, raises an inference of fact sufficient to sustain a verdict of negligence on the part of the deceased driver and sufficient to overcome the presumption of due care. It has been said the mere operation of an automobile on the wrong side of the highway is sufficient if unexplained. In *Hamilton v. Reinemann* (1940), 233 Wis. 572, 290 N. W. 194, we discussed the *Seligman Case* and *Booth v. Frankenstein* (1932), 209 Wis. 362, 245 N. W. 191, and stated the mere operation of a car upon the wrong side of the highway makes at least a *prima facie* case of negligence and is enough, in the absence of an explanation which the jury is bound to accept, to warrant an inference of negligence on the part of

its operator. We find no error in the court's refusal to instruct the jury upon the presumption of due care; the presumption dropped out of this case entirely.

It is further contended by the defendant the trial court was in error in not submitting the case under the doctrine of assumption of risk. This case was tried prior to *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. (2d) 374, 113 N. W. (2d) 14, but after *Baird v. Cornelius* (1961), 12 Wis. (2d) 284, 107 N. W. (2d) 278. In *McConville,* the assumption-of-risk question was given and we reversed the trial court and granted a new trial on the ground the type of assumption of risk which was based on implied consent was abolished and such situations should be submitted as a contributory-negligence inquiry. If the instant case had been submitted on assumption of risk and, assuming that the plaintiff would have properly preserved her contention that the submission of assumption of risk was improper, we would now reverse as we did in *McConville.*

In Question 3 of the verdict, the jury was asked whether at or immediately prior to the time of the accident the plaintiff was negligent for her own safety in any of the following respects: (a) Did she willingly expose herself to the risk of injury by entering and riding in the automobile of Louis Shepherd, and (b) as to lookout? The jury answered both questions "Yes." The cause questions relating to the negligence of Shepherd, the negligence of the plaintiff, and the apportionment of the total of such negligence were framed to inquire whether such negligence was the cause of the accident and resulting injuries to the plaintiff. The negligence question was cast in assumption-of-risk language and seems to have emphasized the question of whether she voluntarily exposed herself to the risk of injuries rather than whether it was unreasonable under the circumstances for her to have entered and ridden in the automo-

bile. The wording of the cause question was also inappropriate because the plaintiff's negligence in this respect could not have been a cause of the collision although it could have been of her injuries.

It is probable the jury was confused by the form of the negligence question, and would not have found her negligent in riding in the Shepherd car if the question had been put in terms only of negligence rather than of willing exposure to risk. On the other hand, if the jury did intend to find her negligent in riding with Shepherd under the circumstances which she knew or should have known, the jury may have answered that such negligence was not causal because it concluded quite properly that it was not a cause of the collision, and for this reason we consider a new trial is required.

In framing this verdict, the trial court did not have the benefit of the decision of *McConville v. State Farm Mut. Automobile Ins. Co., supra.* In that case we pointed out that the type of assumption of risk theretofore implied from the willingness of a guest to proceed in the face of a known hazard was no longer a defense and would constitute negligence if the guest's exposure of himself to a particular hazard was unreasonable and a failure to exercise ordinary care for his own safety. A guest's action in proceeding in the face of a known hazard for which the host is responsible is not always unreasonable and when under the circumstances it is not unreasonable, it does not constitute negligence and is not a defense. The test of negligence applied to a guest is the same as applied to any other person. The mere foreseeability of possible harm to himself by the guest is not enough to constitute negligence. Acts or omissions in the face of a known hazard may or may not be negligence depending on the circumstances. Under the old doctrine of assumption of risk, the test was the implied assumption or willingness of the guest to take the risk

whether such assumption would or would not have been taken by a person of ordinary prudence. *Giemza v. Allied American Mut. Fire Ins. Co.* (1960), 10 Wis. (2d) 555, 103 N. W. (2d) 538, 106 N. W. (2d) 609.

The basis for negligence of a guest is his failure to exercise ordinary care for his own safety. Since the negligence of the guest (1) may occur at the time of entering the car, or (2) may originate at that time and continue throughout the ride, or (3) may occur during the ride and constitute an additional act, or (4) may occur during the ride and constitute the only act, the inquiry of the guest's negligence for his own safety should be adapted to the particular facts. For analogies to such fact situations, see *Severson v. Hauck* (1960), 11 Wis. (2d) 192, 105 N. W. (2d) 369, *Huntley v. Donlevy* (1962), 16 Wis. (2d) 412, 114 N. W. (2d) 848, *Schinke v. Hartford Accident & Indemnity Co.* (1960), 10 Wis. (2d) 251, 103 N. W. (2d) 73, and *Giemza v. Allied American Mut. Fire Ins. Co., supra.*

The defendant contends no cause question concerning the guest's negligence should be submitted or, if submitted and a guest is found negligent, the cause question should be answered "Yes" by the court as a matter of law. *McConville* did not hold negligence on the part of a guest is necessarily contributory negligence in the sense that cause which was inherent in the assumption-of-the-risk question is also inherent in negligence. More than a change of labels was intended and a cause question should be submitted to the jury as with any other issue of negligence. A jury might well be justified in finding the negligence of a host which was a cause of the collision bore no relationship to the negligence of the guest and consequently the guest's negligence would not be a cause of his injuries. However, when the guest's negligence in riding with the host consists of exposing himself to a hazard which is found to be causal

negligence on the part of the host, the guest's negligence would necessarily be a cause of his injuries. As pointed out in *McConville,* page 385: "A guest's negligence in riding with a host-driver whose known habits or lack of skill [or, in this case, sleepiness] presents a hazard would not be a cause of a collision, but would be a cause of the guest's injury resulting from that hazard." As a practical matter, a trial court could not determine the cause question in advance of submitting the verdict to the jury, but if a jury found the guest negligent and incorrectly found such negligence was not a cause of his injuries, the trial court should correct the verdict.

Some question has been raised by the use of the terms "active negligence" and "passive negligence" in *McConville* —terms which have heretofore been used in legal jurisprudence. By the term "passive negligence" we include conduct of a guest in failing to use ordinary care for his own safety in entering the car or in riding with the host when knowing of a hazard, whether the hazard be a condition of the car, the condition of the driver, his lack of skill, or any other hazard. Such negligence may contribute to or be a cause of the guest's injury or may not, depending upon the facts of the accident and the conduct of the host, but such negligence is not a cause of the collision or the accident. In such a case, the collision or accident may be termed the immediate cause or conduit through which the negligence of the host or other driver, or both, causes the injuries to the guest. If a cause of the accident is related to the hazard in respect to which the guest was negligent, such passive negligence of the guest is a contributing cause of his injuries. Active negligence on the part of the guest in failing to exercise ordinary care for his own safety consists of his acts or omissions which directly may be a cause of the accident or collision, *e.g.,* interference with the operation of the car or its operator.

Lookout and failure to warn on the part of a guest may in exceptional cases be a substantial factor or a cause of the collision or accident but ordinarily such negligence is not, although it may be a cause of his injuries, as the jury found in this case. The test of the guest's negligence is whether under the circumstances he acted with the care a reasonably prudent man would have used under the circumstances. His negligence so determined is based on his duty to use ordinary care as a guest under the circumstances for his own safety. A guest's duty of lookout is for his own safety; it is not owed to the operator of the car or to third persons. He may assume the host-driver understands and appreciates better than he the control the host has over the car and that he will not operate it in a negligent manner. The guest may so assume until such time as the host-driver becomes negligent and creates a danger to the degree of subjecting him to an unreasonable risk of injury. A determination of the guest's negligence for his own safety is not a basis of liability to third persons. The language in *McConville* implying lookout is normally active negligence and a cause of the collision is modified. If in exceptional cases lookout or failure to warn by the guest constitutes active negligence or if, in cases of interference with the operation of the car or its operator, such conduct is to be a basis of liability to another, then such negligence in the cause and the apportionment questions should be stated separately from the item of negligence causing only the guest's injuries.

When the only issue in a case is between the guest and either the host or the host and another driver, the ultimate question relating to their respective negligence is whether such negligence caused the guest's injuries. In most cases it is not necessary to determine whether the lack of care of the various parties found negligent caused the collision, as distinguished from the injuries, and the difficulty en-

countered in the present case may be obviated by framing all the cause questions in terms of whether the negligence of each caused the guest's injuries. The apportionment question likewise should then be submitted only in terms of causing the plaintiff's injuries. Such inquiries would determine the guest's right to recover and also the rights of contribution under the rule of *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 114 N. W. (2d) 105. If the form of the verdict is in terms solely of causing the injuries of the plaintiff guest, the instructions to the jury should make clear the relationship of the parties' acts to the accident and to the injuries.

When there is an issue between a host-driver and another driver concerning the injuries or property damage to either or both of them, separate comparison questions may not be necessary as suggested in *McConville*. A recent law-review article [3] points out one apportionment question might still be used as basis for the two comparisons and the avoidance of a possible inconsistent verdict. In such a case the inquiries relating to the cause questions of negligence of the host and other driver could be stated in terms of causing the collision and also, if it is in the case, the question of the guest's active negligence. The question concerning the guest's passive negligence would be stated only in terms of causing his own injuries and not also of causing the collision. The apportionment question would include all the negligence which caused the collision *or* the injuries. In such a comparison, the guest's right of recovery would be determined as in an ordinary case by considering the guest's total negligence in reducing the amount of his recovery. The issue between the host and the other driver for their respective damages would be determined by considering only the

[3] Mr. Justice THOMAS E. FAIRCHILD, Recent Developments in the Area of Torts, 46 Marquette Law Review (1962), 1, 11.

negligence causing the collision, and the percentages of negligence found in the verdict would be converted by the court into proportional fractions of that negligence for that purpose. The same result could be reached by stating all the causal questions in terms of causing injuries to the plaintiff. Since the negligence of the host and the other driver and the active negligence of the plaintiff, if any, causing the plaintiff's injuries would necessarily be a cause of the collision, the same basis of causal negligence attributable to the damages suffered by the host or the other driver would be determined. The court by a simple process of fractions could determine the right and the amount of recovery between them.

Several other interesting questions have been raised by the defendant, but as this case must be reversed and a new trial granted, it would serve no useful purpose to discuss them and further discussion might be soporific. Neither the defendant nor plaintiff raises any question that the amount of damages was sustained by the evidence or resulted from the accident and there is no reason for including this issue in the new trial.

*By the Court.*—Judgment reversed, and a new trial granted on the questions of negligence only.

The following memorandum was filed February 5, 1963:

PER CURIAM (*on motion for rehearing*). Included in the judgment for $3,192.93 appealed from is a $500 item due under the "medical pay" provisions of the policy, with respect to which the trial court directed a verdict. Regardless of the outcome of the new trial ordered on the negligence issues on the causes of action grounded on tort, the final judgment to be rendered herein shall provide for the recovery by plaintiff father of this $500 together with proper interest thereon unless in the meantime defendant shall have paid the same.

Inasmuch as the cause of action for recovery under the "medical pay" provisions of the policy is grounded on contract, the interest on the $500 accrued from the date plaintiff father submitted to defendant proper proof of his having paid medical and hospital bills for Sharon resulting from the accident in a total amount of at least $500, and a demand for payment thereof.

As our original mandate stands defendant was entitled to tax costs. As we believe this matter relating to the $500 item in the judgment could have been disposed of by stipulation of counsel without resort to a motion for rehearing, we make no change in the mandate with respect to costs.

The motion for rehearing is denied without costs.