REYNOLDS, Appellant, vs. MADISON BUS COMPANY, and others, Respondents.

*February 28—April 8, 1947.*

For the appellant there were briefs by *Hill, Beckwith & Harrington,* and oral argument by *D. V. W. Beckwith* and *W. L. McCusker*, all of Madison.

For the respondents there was a brief by *Schubring, Ryan, Petersen & Sutherland,* and oral argument by *A. J. McAndrews,* all of Madison.

WICKHEM, J.   Plaintiff appeals from a judgment in his favor and urges numerous errors in support of his contention that a new trial should be ordered.   In order to understand the materiality of the errors alleged, it is necessary to review the facts.

The accident happened at 9:30 on the evening of April 11, 1945, at the intersection of South Hancock street and East Wilson street in the city of Madison.   South Hancock street runs north and south and East Wilson street runs east and west.   It is a right-angle intersection.   Plaintiff, sixty-one years of age, resides in Madison.   He had spent the day in Milwaukee, leaving his car in a parking lot in front of the Franklin street station of the St. Paul Railroad, the grounds of which are bounded on the west by South Hancock street. On the train he met an acquaintance, Harry Slater, whom he invited to ride home with him after leaving the train.   Plaintiff and Slater left the train at the Franklin street station and went to the car.   Plaintiff drove into South Hancock street and turned right to cross East Wilson street, it being his intention to reach the west side of town by driving north on Hancock street for several blocks.   East Wilson street is an arterial street.   To the west of the intersection on the south side of Wilson street business structures are built up to the sidewalk.   Plaintiff stopped his car in the vicinity of the stop sign, and according to his testimony in such a place that he could see both east and west on Wilson street.   He states that there were cars to his right a long distance away and the lights of an automobile three hundred feet west of Hancock street. After making an observation and concluding that he could safely cross Wilson street he started his car in low and then shifted to second.   His last recollection is that he made this shift of gears and thought he was across the center line of Wilson street.   It was raining but his vision was not obstructed and there were no cars on the south side of Wilson

street to interfere with his vision. He has no recollection of looking to the left after he started into the intersection. He thinks he was traveling about ten to twelve miles an hour, but it might have been fifteen miles an hour. Slater's testimony confirms that of plaintiff in respect of the stopping of the car at the intersection. Slater looked to the right and saw no cars in close proximity but did not look to the left at the time the stop was made at the arterial. According to Slater's testimony plaintiff did not get to a speed of fifteen miles an hour prior to the accident, and when hit, plaintiff's car had reached a distance somewhere between twenty-five and thirty feet north of the south curb. Wilson street is 40.9 feet wide. When plaintiff's car was between fifteen and twenty feet into the intersection, Slater saw the bus when it was from thirty to fifty feet west of the west curb line of South Hancock street, and at that time Slater did not anticipate a collision. The bus struck plaintiff's car at about the rear fender, spun the car around at least once, and plaintiff was pitched out of the car. Soon after the accident police officers arrived, and in their presence Slater asked the bus driver why he did not come to a stop before he hit plaintiff's car and the driver replied, "I didn't see you." Upon being asked whether he applied his brakes the bus driver said, "No, I didn't see you." The bus driver testified that he did not travel two seconds after he saw the Reynolds car until the time of the accident. There is evidence that the bus driver's application of brakes and the impact were nearly simultaneous. The speed limit on the street was twenty-five miles per hour. The night was dark; it was raining, and due to the buildings in the vicinity of the sidewalk the intersection was what might be termed a "blind one."

Numerous errors are assigned by plaintiff, and upon a motion to review defendants contend that there was no jury question and that a verdict should have been directed and the action dismissed. In the view that the court takes of the

case only two questions need to be discussed at any length, and this discussion will incidentally answer defendants' contentions upon their motion to review.

Plaintiff's first contention is that the court erred in not submitting to the jury a question whether the bus driver was guilty of negligence in respect of speed. On this point the evidence of passengers of the bus placed its speed at from fifteen to twenty-five miles per hour. An admission by the bus driver to a police officer after the accident put the speed of the bus at twenty-five miles per hour. The speed limit on the street was twenty-five miles per hour. The evidence of Slater, a witness who was sitting to the right of plaintiff, was to the effect that when the Reynolds car was from fifteen to twenty feet into the intersection the bus was from thirty to fifty feet west of the near limit of the intersection. At that time plaintiff's car was going from ten to fifteen miles per hour and Reynolds, after leaving the south curb of Wilson street, went from twenty-five to thirty feet before being struck. Hancock street is thirty-four feet wide between curbs. East Wilson street is 40.9 feet wide and therefore plaintiff's car had reached a point from eleven to sixteen feet from the north curb of Hancock street before being struck. According to this computation the jury was entitled to believe that when the Reynolds car going ten miles an hour was about ten feet from the point of the collision the bus was in the vicinity of forty-five feet from the collision. Making the usual allowances for the fact that Slater's testimony consists of estimates (which, of course, is also true of the testimony of those who testified directly as to the speed of the bus), the jury could conclude that the bus was going about three or four times as fast as plaintiff's car which would put its speed above that permitted by law. In addition to this the night was dark and rainy and the bus was approaching a blind intersection. We think that there was a jury question whether the speed of the bus exceeded the prescribed limit of twenty-five miles per

hour. In addition to this, due to the conditions of the evening and the visibility of the intersection, a jury could have found that even the speed of twenty-five miles per hour which they were permitted to find upon the basis of defendants' witnesses was too great in that, (1) it impaired the bus driver's ability to see and take precautions at a blind intersection, and (2) that under the conditions it may have misled plaintiff into entering the intersection and subjecting himself to the perils of a collision.

In this respect we call attention to the holding in *Lang v. Baumann*, 213 Wis. 258, 261, 251 N. W. 461, that "The establishment of a speed limit for residential districts does not mean that persons driving at less than the permitted speed are as a matter of law exonerated from negligence with respect to speed. The roads were extremely icy, and even assuming that the jury should not have been permitted to infer a greater speed than twenty miles an hour, they had the right to infer negligence in approaching an obstructed corner on an icy street at that rate of speed."

Plaintiff's second contention is that there were erroneous instructions upon questions relating to right of way. The court submitted questions as to right of way in respect of both plaintiff and defendants. The questions, stating the master question and the specific questions, together, were "Was the defendant Herbert R. Amundson, the driver of the bus, negligent. . . . (c) As to right of way?" "5. Was the plaintiff Paul N. Reynolds negligent in the operation of his automobile at and immediately preceding the time of this accident . . . (c) as to right of way?"

The court gave the following instruction in submitting the question relating to the bus driver and referred back to it without repeating it in connection with plaintiff:

"As to right of way, section 85.18 of our statutes, provides, as far as material to the issues here involved, as follows:

" 'When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, except as otherwise provided in this section. The driver of any vehicle driving at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder.'

"85.18 (4) reads: *'Vehicles stopping for arteries for through traffic.* The operator of any vehicle that has come to a full stop as required by section 85.69, upon entering an artery for through traffic, as well as operators of vehicles on such artery for through traffic, shall be subject to the provisions of subsection (1).'

"*However, it may be stated that the general rule that the first entering an intersection has the right of way, has some limitation. It does not justify one first reaching an intersection in going ahead when it is reasonably apparent that a collision will result from so doing. When each driver approaches an intersection with his car in control as it should be, and as it will be if he obeys the statutory provisions, the one who by clear margin enters the intersection first may under the rule requested rightly proceed, as he may then reasonably anticipate that the other will allow him to pass ahead. But if the other vehicle is so close or coming at such speed that a collision is apparently likely to occur if he proceeds, he must then yield or so keep control of his car as to be able to avoid interference.*

"You are further instructed that it is only when two vehicles approach or enter an intersection at approximately the same time that a driver to the left is compelled to yield the right of way to the driver to the right, and the possession of this right does not of course justify the possessor in plunging ahead regardless of consequences nor in failure to exercise ordinary care to avoid injury to others, but the fact is an important one to be considered in deciding the question of negligence."

The portion of the instructions italicized above is claimed to be erroneous and to have been condemned by this court in *Schmallenberg v. Smith,* 237 Wis. 285, 296 N. W. 597; *Roellig v. Gear,* 217 Wis. 651, 260 N. W. 232; and in *Beer v.*

*Strauf,* 236 Wis. 597; 296 N. W. 68. Defendants assert that the instruction is authorized by the decision of this court in *Wallace v. Papke,* 201 Wis. 285, 229 N. W. 58, and that in the *Roellig Case* one of the grounds of reversal was the trial court's refusal to give a similar instruction or portions of it.

The contentions of the parties and the state of the authorities indicate a difficulty that calls for a review of the subject of right of way. The concluding portion of the trial court's instruction is virtually a quotation from sec. 85.18 (1), Stats., and is, of course, correct. The italicized portion is nearly a literal excerpt from the opinion in the *Wallace Case, supra.* A careful consideration of the opinion in the *Wallace Case* indicates two things: (1) The excerpt does not deal with a situation in which two cars approach or enter the intersection at approximately the same time but rather where one driver has entered the intersection first by a clear margin; (2) the whole excerpt is hypothetical and refers to a general rule in absence of statute which the preceding paragraph of the opinion states is not the rule in this state, citing *Bertschy v. Seng,* 181 Wis. 643, 195 N. W. 854. In the *Wallace Case* the driver on the left claimed that he had entered the intersection by a clear margin ahead of the car approaching on his right. The trial court instructed that neither party had the right of way as a matter of law and that each was bound to exercise due care to avoid a collision. Upon appeal the trial court's instruction that neither party had the right of way as a matter of law was attacked as erroneous. The court recognized that the general rule in absence of statute was as contended for by plaintiff but asserted that in the *Bertschy Case, supra,* this general rule had been repudiated by this court. The court then made the statement included in these instructions in order to show that had the general rule obtained the party claiming the benefit was not within its limitations. The instruction of the trial court was held proper and the judgment was affirmed. Syllabus No. 3 in the *Wallace Case* states that

"Even had what is the general rule, in the absence of statute, that the vehicle first entering the intersection had the right of way, been applicable to the time and circumstances of the situation, the driver was still bound to note the closeness and speed of the other car" and to take proper steps to avoid interference. At the time when the accident involved in the *Wallace Case* occurred there was no statute specifically applicable to situations such as were there involved. Ch. 454, Laws of 1929, was enacted thereafter and before the decision in the *Wallace Case* and read as follows:

"(3) *Vehicles in intersections have right of way over other vehicles.* The operator of a vehicle approaching an intersection shall yield the right of way to a vehicle that has entered the intersection." (Sec. 85.18 (3), Stats. 1929.)

This section, however, was repealed by ch. 98, Laws of 1931, and the statutory situation is now the same as it was at the time of the *Wallace Case, supra.* On the basis of the foregoing authorities it must be held that there are no rights of way at intersections other than those contained in sec. 85.18, Stats. As applied to this case there could be no right of way, statutory or otherwise, unless the two vehicles approached or entered the intersection at approximately the same time. Hence, the italicized portion of the instruction is erroneous because contrary to the law as stated in both the *Wallace* and the *Bertschy Cases, supra.* This was what was intended to be held in *Roellig v. Gear, Beer v. Strauf,* and *Schmallenberg v. Smith, supra.* In *Roellig v. Gear* an instruction that if the driver to the left enters the intersection first he is entitled to the right of way was held erroneous, it being pointed out that if the vehicles approach or enter the intersection at approximately the same time the driver to the left is compelled to yield the right of way to the driver at the right irrespective of who enters the intersection first. The foregoing does not mean that if the cars do not approach or enter at approximately the same time the situation of the cars in respect to the inter-

section is not of importance in bearing upon the negligence of the parties. Thus, the fact that the car to the left is well into the intersection and that the other driver is a considerable distance away may bear strongly on this issue, and the jury may conclude that since the driver to the left owes no positive duty to yield the right of way he was in the exercise of due care in proceeding across the intersection. In connection with this issue the jury may of course consider the speed of the competing car, and if in view of the whole situation the driver of the car in the intersection should have perceived that an accident would likely occur if he persisted in crossing, may infer that he was negligent in so doing. It may be that the italicized instruction can be so remodeled as to assist the jury in passing upon the foregoing issue but it ought not to be cast in terms of right of way and it ought to be made clear that it is not an instruction on statutory right of way. In *Roellig v. Gear,* it was considered proper to give a portion of the excerpt which in no way refers to statutory right of way but simply states that a person who is in the intersection may proceed if due care and caution would permit him to do so. Applied to the present case we think the instructions are so given as to be misleading and apparently inconsistent. In defendants' brief it is asserted that the jury found the bus driver to have had the right of way, and it is a fair assumption that the jury either thought the bus driver had the right of way or were confused about it. As we read the record we see no possibility that the bus driver had the right of way. Either the two cars were approaching the intersection at approximately the same time, in which case plaintiff had the right of way, provided he had stopped at the intersection, which the jury found that he did, or if they were not, the matter of right of way was not involved and a jury were faced simply with a question of general negligence.

In connection with the general subject of right of way we deem it advisable to make one further observation. When

two cars approach or enter the intersection at approximately the same time the driver to the left has a statutory duty to yield the right of way. The driver to the right is negligent if he insists upon claiming his right of way where it is evident that his competitor for the intersection is not going to respond to this duty. These are separate items of negligence which exist concurrently and are to be measured and compared by the jury. In no situation does the person who has the right of way transfer his right to his adversary by negligently insisting upon it. He simply becomes guilty of contributory negligence. Any other rule would mean that a driver who had a duty to yield the right of way and who gave evidence of his intention not to yield would somehow secure a right of way as the result of his own negligent conduct in combination with that of the driver to whom he owed the duty. This is not the law. Instructions should be given with care to avoid an impression which is to some extent conveyed by the form of the question that the right of way shifts back and forth according to the circumstances above referred to. In this connection it should be stated that if a party has violated his duty to yield a statutory right of way at an intersection this is a separate and distinct item of negligence even though his failure has been the result of an inadequate or negligent lookout. If, however, the two cars are not approaching the intersection at approximately the same time and there is therefore no statutory duty on one or the other to yield the right of way, the negligence of either or both in proceeding into the intersection may frequently as in other situations involving general negligence be considered to be part and parcel of some other item of negligence such as negligent lookout. We adverted to this situation in *Culver v. Webb,* 244 Wis. 478, 12 N. W. (2d) 731, where a contention was made that a question on lookout should have been submitted in addition to one on management and control. In that case defendant had seen and taken account of the situation but it was contended that

in the course of thereafter maneuvering his car he incidentally made inadequate observations and that this called for a question as to lookout. We held that since defendant had seen the situation and commenced to take steps to avoid an accident the whole question was thereafter whether he was guilty of negligent management and control. So also where the driver of the car is completely negligent as to lookout and because of this negligence wholly fails to see another car or to take any steps to avoid a collision the sole negligence is in respect of lookout. We advert to the situation solely for the purpose of avoiding wherever practicable such a duplication of findings as will render the comparison of negligence inaccurate.

The court is of the view that there were jury questions as to the negligence of both plaintiff and defendant bus driver; and that it cannot say as a matter of law that plaintiff's negligence was equal to or greater than that of defendant bus driver; that there was an issue for the jury in respect of the bus driver's speed and that the instructions in respect of right of way were erroneous. It follows that there must be a new trial, and in view of this fact we see no point in considering other errors assigned by plaintiff including plaintiff's contention that the damages are grossly inadequate.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.