VOGEL and another, Appellants, vs. VETTING and another, Respondents.*

*September 10—October 6, 1953.*

* Motion for rehearing denied, with $25 costs, on December 1, 1953.

For the appellants there were briefs and oral argument by *Dudley O. Emmert* of Manitowoc.

For the respondents there was a brief by *Hougen, Brady & Murphy* of Manitowoc, and oral argument by *Frank A. Murphy*.

BROADFOOT, J.   Each driver was injured in the collision. They were taken to the same hospital in the same ambulance and treated by the same doctor, who testified that each, because of injuries, suffered a retrograde amnesia.  Each driver was alone.  The plaintiff Mary Vogel could remember nothing that happened after passing a farm some distance west of the intersection and Vetting could remember nothing after he passed a certain driveway, known as the Lensmeyer driveway, which was some 550 feet south of the intersection. Mrs. Vogel could testify to nothing that would aid in explaining the cause of the collision.  Vetting testified that when he was opposite the Lensmeyer driveway he was traveling at about 35 miles per hour.

There was one witness, George Schuh, who testified that he saw both cars before the accident and that he saw the accident.  He was about to enter a barn on his father's farm which was about 650 feet southwest of the scene of the accident.  He testified that he first saw the Vetting car when it was 10 or 15 feet north of the Lensmeyer driveway.  He watched the Vetting car for a sufficient length of time to make an estimate as to its speed.  In his judgment the Vetting car was going from 45 to 50 miles per hour.  He then looked north and saw the Vogel car, which was traveling on the north side of the highway going east at a speed estimated by the witness at 15 to 20 miles per hour.  At the time he saw the Vetting car he was approximately 300 feet southwesterly from it, and the Vogel car, when he saw it, was about 600 feet north from where he was standing.  His testimony as to the cars immediately before the collision was as follows:

"*Q.* Now, from the time that you first saw the Vogel car, George, did it keep up the same speed from the time you saw it until the time of the crash?  *A.* Well, that might have slacked up a little.

"*Q.* And the Vetting car, did that continue at the same speed? *A.* No, that slacked up too right on the—too late though.

"*Q.* You saw it slack up; whereabouts was it when you saw it slack? *A.* Just before it hit it.

"*Q.* Just before it hit it; a matter of about how far would you say? *A.* About five, ten feet. . . .

"*Q.* Did you notice Mr. Vetting slow down at all as he passed the Lensmeyer drive? *A.* No, he didn't, I didn't notice nothing.

"*Q.* He might have slowed down some and you wouldn't have noticed it, is that it? *A.* I wouldn't think he slowed down until he got to the intersection.

"*Q.* You didn't keep your eye on his car all the time, did you? *A.* No, not all the time. . . .

"*Q.* And the Vogel car kept right on traveling along about at the same speed, is that right, is that correct? *A.* Yes.

"*Q.* . . . up until the time the collision occurred, is that right? *A.* Right.

"*Q.* And did you see the cars come together? *A.* I seen them come together.

"*Q.* You did, is that right, George? *A.* That is right.

"*Q.* Now, did you observe whether the Vogel car turned to the left or the right before it was struck? *A.* No, it kept about on the north side of the east and west road.

"*Q.* And it kept right on going, is that it; is that right? *A.* That is right.

"*Q.* On the north side of the road. *A.* North side.

"*Q.* And did you observe whether the Vetting car turned to the left or the right before the collision occurred? *A.* Well, it might have turned to the left a little.

"*Q.* It might have; you mean you don't know whether it did or not? *A.* No."

The plaintiffs contend that the findings of negligent lookout and control and management by Mary Vogel have no support in the evidence. It is clear from the record that each driver had an unobstructed view of the intersecting highway for several hundred feet prior to reaching the intersection. On the question of lookout, the trial court instructed the

jury that where a motorist receives injuries in an accident which result in amnesia as to the events leading up to the accident, the motorist is entitled to the benefit of the presumption that he exercised due care for his own safety until there is competent evidence to overcome that presumption. The drivers each suffered amnesia as a result of injuries sustained in the accident. This presumption of due care applied not only to Mrs. Vogel but to Vetting. Therefore, we must presume that each driver looked and saw the other car which was in clear view. There is nothing in the record upon which there could be a finding that either driver was negligent as to lookout.

In passing upon the question of negligence of the respective drivers in the management and control of their automobiles, the jury was entitled to draw legitimate inferences from the physical facts. In that connection it must be remembered that although the driver entitled to the right of way may rely on the assumption that the other driver will yield him the right of way, that assumption disappears when it appears or should appear to him, as a person of ordinary and reasonable prudence, that the other driver will not or cannot yield. It then becomes the duty of the favored driver to exercise ordinary care in the management and control of his automobile. *Lozon v. Leamon Bakery Co.* 186 Wis. 84, 202 N. W. 296; *Hamm v. Miller,* 256 Wis. 192, 40 N. W. (2d) 387. In *Reynolds v. Madison Bus Co.* 250 Wis. 294, 304, 26 N. W. (2d) 653, this court said:

"In connection with the general subject of right of way we deem it advisable to make one further observation. When two cars approach or enter the intersection at approximately the same time the driver to the left has a statutory duty to yield the right of way. The driver to the right is negligent if he insists upon claiming his right of way where it is evident that his competitor for the intersection is not going to respond to this duty. These are separate items of negligence which

exist concurrently and are to be measured and compared by the jury."

Under the circumstances in this case we cannot say that the jury was not justified in drawing an inference that each driver was negligent with respect to management and control.

Plaintiffs urge strongly that the trial court was in error in submitting two right-of-way questions to the jury: One, whether two cars approached or entered the intersection at approximately the same time, and the other, whether plaintiff was negligent with respect to failure to yield the right of way. It is their contention that question 1 directed a cross-examination of the jury for the determination of a mere evidentiary fact, and that question 4 (c) was the proper question for submission of the issue of right of way. This, the plaintiffs contend, called for a determination by the jury of the ultimate fact.

We agree that the ultimate fact to be determined by the jury was whether or not the plaintiff was negligent with respect to yielding the right of way. If the right-of-way question is submitted independently, the jury might overlook this item of negligence in the apportionment question. The matter of failure to yield the right of way should be included in the questions inquiring as to the negligence of the driver of the automobile approaching from the left, and the instructions should be complete as to the duty of the driver so approaching an intersection where the two highways are of equal dignity.

It was determined in the case of *Reynolds v. Madison Bus Co.* 250 Wis. 294, 26 N. W. (2d) 653, that there are no rights of way at intersections other than those contained in sec. 85.18, Stats. Sub. (1) of this statute provides:

"When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right,

except as otherwise provided in this section. The driver of any vehicle driving at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder. The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first-mentioned vehicle; provided, the driver of the vehicle turning left has given a plainly visible signal of intention to turn as aforesaid."

Much difficulty has been encountered in the application of the word "approximately" in this statute. We are referred to no case in which this court has dealt directly with it. In *Himebauch v. Ludtke,* 256 Wis. 1, 7, 39 N. W. (2d) 684, this court said:

"The word 'approximately' has no technical legal meaning. It is defined by Webster as 'situated or drawn very near or close together; near to correctness; nearly exact.' "

We agree that the word has no technical legal meaning and probably was not a happy choice when the legislature used it. The word is used in the statutes of many states and the courts of those states have commented upon it at length. In the case of *Moore v. Kujath,* 225 Minn. 107, 112, 29 N. W. (2d) 883, 886, in dealing with a similar statute, the court said:

"By *approximately,* the legislature must have meant the approach to an intersection of two vehicles so nearly at the same time that there would be imminent hazard of a collision if both continued the same course at the same speed. In that case, he on the left should yield to him on the right. While the driver on the left is not required to come to a dead stop, as at a through highway stop sign, unless it is necessary to avoid a collision, he nevertheless must approach the intersection with his car so under control that he can yield the right of way to a vehicle within the danger zone on the right. Such must have been the legislative intent. Other states

having the same statutory provisions have supported this interpretation."

We adopt the language of the Minnesota court in the hope that it will be of practical help to attorneys and trial judges dealing with the statute. This case is reported in 175 A. L. R. 1007, and is followed by an annotation dealing with the right of way at street intersections.

The plaintiffs next contend that the two cars did not approach or enter the intersection at approximately the same time. They attempt to establish this by a mathematical computation based upon the assumption that the Vogel car was traveling at 20 miles per hour and the Vetting car was traveling at double that rate of speed and thus had twice the distance to travel. The Vogel car was struck on the right side by the front of the Vetting car, and the collision took place in the northeast quadrant of the intersection. They contend that this also demonstrates to a mathematical certainty that the Vogel car was in the intersection ahead of the Vetting car.

The trouble with the argument is that the plaintiff's negligence is not based upon her arrival at the intersection ahead of the defendant. The question depends largely upon the danger of collision when the relative distances and speeds of the two vehicles are considered. If they indicate danger of collision if the two vehicles continue on their respective courses at the same rates of speed, the vehicle approaching from the left should yield the right of way. By applying this rule, it is apparent that Vetting was in the danger zone, considering his speed and course of travel, and Mrs. Vogel should have yielded the right of way. This follows if he was traveling at a rate of 35 miles per hour, as he testified to, and more so if he was traveling at a rate of 45 to 50 miles per hour, as testified to by the witness Schuh.

Vetting was absolved of negligence as to speed. There was, therefore, no forfeiture of his right of way. If we con-

sider only the meager evidence in the record, as we must, and do not indulge in conjecture or speculation, the record supports only one conclusion, and that is that Mrs. Vogel was negligent in failing to yield the right of way.

The jury found each driver negligent with respect to management and control. It also found that the cars approached or entered the intersection at approximately the same time. As a matter of law, therefore, the plaintiff was negligent in failing to yield the right of way. Ordinarily the apportionment of negligence is a question for the jury. In this case, however, in view of the withdrawal by the defendant of his claim for damages the plaintiff had the burden of proving that the negligence of the defendant exceeded her own negligence. This she clearly failed to do.

The record discloses that the plaintiff was driving her husband's automobile on an errand for him. She was his agent and her negligence is imputed to him. Therefore, although the defendant was found to be a joint tort-feasor, neither plaintiff can recover.

Other error is claimed by the plaintiffs. A determination of such claims, even if in favor of the plaintiffs, could not change the result. Therefore, in spite of the faulty verdict and other possible error in the trial, the court was justified in entering its judgment dismissing the complaint.

*By the Court.*—Judgment affirmed.