Winston and another, Plaintiffs and Respondents, vs. Weiner, Defendant and Appellant: Baldwin and another, Defendants and Respondents.

*December 4, 1957—January 7, 1958.*

586

588

For the appellant there were briefs by *Heft & Coates* of Racine, and oral argument by *Carroll R. Heft*.

For the respondents Winston there was a brief by *R. Stanley Kelly* of Burlington, attorney, and *Cavanagh, Mittelstaed, Sheldon, Heide & Hartley* of Kenosha of counsel, and oral argument by *William A. Sheldon*.

For the·respondents Marion Baldwin and Travelers Indemnity Company there was a brief by *Godfrey & Godfrey* of Elkhorn, and oral argument by *Thomas G. Godfrey*.

FAIRCHILD, J.

1. Appellant asserts that the trial court erred in failing to submit the question of negligence of defendant Baldwin as to lookout. The court did submit a question as to her negligence with respect to failing to pass Weiner to the right giving him at least one half of the main-traveled portion of the roadway, and a question with respect to management and control. Both questions were answered "No" by the jury. The record shows that when the form of the special verdict was discussed by court and counsel, appellant's counsel urged submission of the issue of speed but assumed that there would be no question as to lookout. On motions after verdict, the only two grounds for new trial which could be material on this point were failure to include the issue of speed and failure to include "the questions proposed upon the trial by this defendant, to which exceptions were preserved." The decision of the court on motions after verdict indicates that the only questions raised as to defendant Baldwin's negligence were whether she was negligent as to management and control as a matter of law and whether the court erred in failing to submit the issue of speed. Appellant does not urge these points on appeal.

Appellant cannot, as a matter of right, claim on appeal that the court erred in failing to submit the issue of lookout. *Zoellner v. Kaiser* (1941), 237 Wis. 299, 296 N. W. 611. In *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. (2d) 380, it was said, "We deem the correct rule to be that no error of the court should be reviewable *as a matter of right* on appeal without first moving in the trial court for a new trial bottomed on such error, if the error

is of a category that a trial court could correct by granting a new trial."

Appellant recognizes this rule, but asserts that he should not be bound by it in this instance because the law as announced by this court prior to the trial would have made the submission of the issue of lookout improper and that rule was changed by a decision of this court rendered after the trial and decision on motions after verdict although prior to the entry of judgment herein. In *Vogel v. Vetting* (1953), 265 Wis. 19, 60 N. W. (2d) 399, the court considered a collision in which each driver suffered amnesia. The court applied the presumption of due care and at page 24 stated, "Therefore, we must presume that each driver looked and saw the other car which was in clear view. There is nothing in the record upon which there could be a finding that either driver was negligent as to lookout." The court further held that the facts would support an inference that each driver was negligent with respect to management and control. Shortly after the *Vogel* decision this court decided the case of *Weber v. Mayer* (1954), 266 Wis. 241, 63 N. W. (2d) 318. There the driver, who was killed, stopped for an arterial and then proceeded and was hit by a truck which must have been in plain sight when he entered the intersection. It was held that a jury finding of negligence as to lookout was sustained by reasonable inference. Thus the *Weber* decision suggested at least that a driver entitled to the presumption of due care by reason of death or amnesia might be found guilty of negligence as to lookout if he behaved as if he did not see. *Wells v. Dairyland Mut. Ins. Co., supra,* was decided January 7, 1957. It expressly overruled *Vogel v. Vetting* and stated a rule as follows, page 512: "In cases involving a driver, who is unable to testify as to the lookout he maintained immediately prior to a collision because of death or amnesia, he ordinarily cannot be found guilty of causal negligence as to both lookout and management and control. If there is no

evidence from which it can reasonably be inferred that he saw the object collided with, then his negligence consists of lookout and not management and control. . . . On the other hand, if there is evidence indicating that such operator did see the object collided with prior to the accident, his negligence lies in the field of management and control, and not lookout." This rule is based on the proposition that in these cases, "the mere happening of the accident supports a finding of either causal negligence as to lookout or management and control, but not both."

Granting that appellant's counsel might have made a request that a question be submitted as to Miss Baldwin's lookout and the court complied had the *Wells* decision been available, we have examined the record and the verdict to determine whether the interests of justice require a new trial. We think not.

The crucial issue was whether Mr. Weiner, Miss Baldwin, or both failed in their duty to pass to the right. Evidently Weiner's car left his proper lane and crossed in front of the Baldwin car. Only if Miss Baldwin were driving on the wrong side could his conduct be explained as a result of her negligence. The jury decided that Weiner was on the wrong side and Baldwin not. Its finding is not challenged. With that issue resolved, virtually the only remaining issue was whether Weiner's deviation was apparent long enough before the collision so that Miss Baldwin could have done something to avoid it. If there was no opportunity to do anything effective, her failure to change speed or course could not be evidence of causal negligence as to lookout.

There was little evidence that there was any substantial distance separating the cars when Mr. Weiner's deviation first became apparent. It consisted of Mrs. Ellsworth's testimony that he came to the wrong side slowly and gradually and Miss Bonnett's statement that she saw him weaving. The jury was instructed on one's right to assume proper conduct

by other travelers until the contrary becomes apparent, the duty to make all reasonable effort to avoid collision after the contrary becomes apparent, and the emergency doctrine. We have no doubt but that, under the circumstances and the instructions given, the jury's finding of no negligence as to management and control was based on a determination that there was not enough time for Miss Baldwin to have done anything effective.

2. Appellant urges that the trial court erred in holding as a matter of law that Mr. Weiner was negligent as to lookout. There were apparent inconsistencies in Mr. Weiner's testimony. Some of his answers were either intentionally evasive or, as suggested by his counsel, may have been caused by lack of thorough understanding of English. He may have remembered what happened, given correct testimony when he said he did not see the Baldwin car, and given false or inaccurate testimony when he said he did not remember. On the other hand, he may not have remembered because of injuries sustained, or may have fallen asleep before the collision. Even if he truthfully did not remember, the possibility that he was in fact attentive seems remote. We are inclined to believe, however, that questions of interpretation, credibility, and weight of his testimony needed to be resolved and should have been left to the jury. If the court erred in this respect, the error was not prejudicial. Unless Miss Baldwin were found negligent in some respect, there would be no occasion for comparison, nor right to contribution, and it is immaterial whether Mr. Weiner was negligent in one, two, or three respects.

3. Finally appellant asserts that the damages awarded to Mrs. Winston were grossly excessive and reflected bias, passion, and perversity.

She was allowed $4,000 for loss of earnings from the collision to the trial. This was slightly more than two years. Her salary of $6,000, briefly enjoyed before the collision,

would not be conclusive, but could be accepted as a measure of her earning capacity. If so, she could have earned $12,000 between the collision and the trial. She apparently earned (after February, 1956) some $3,600, leaving a difference of $8,400. Appellant claims that she should have accepted the position offered her in May, 1955, in order to minimize damages. Had she done so, she would have earned an additional $2,925, leaving a difference of $5,475, which is more than the jury did award. Mrs. Winston testified she did not accept the job in May, 1955, because the injuries to her face made her reluctant to appear in public. This was several months before plastic surgery was performed. Whether the reluctance was so natural, substantial, and compelling as to amount to disability was a jury question, but, as above demonstrated, the record supports the award even if her injuries did not prevent her acceptance of that position.

Mrs. Winston was awarded $23,000 for personal injuries. This award is to compensate her for the shocking experience of the collision itself, the concussion, and the pain and suffering, during the healing period, caused by the injuries detailed in the statement of facts. It must cover the loss of two teeth, the slight deformity in the collarbone, and the involvement of the nerve which causes twitching of the eyelid and mouth. The major portion of this award is to compensate her for cuts in her face, also described in the statement of facts. These not only caused pain and suffering immediately after the accident and at the time of plastic surgery, but will do so again at the time of further surgery. Doubtless the scars caused even greater humiliation in the early months than at the time of trial when they had faded to a permanent color. The jury saw her at the trial. From the portrait photograph taken before she was injured, the photographs taken a few days afterward, and those taken more than a year later, we conclude that the jury could find that a drastic change has occurred in her face, sufficient to cause her real

unhappiness throughout her life. This is true even though the scars have healed and can be improved by further surgery. Mrs. Winston testified to her self-consciousness about her face and the doctors corroborated her testimony.

There was evidence from which the jury could conclude that her injuries impair her capacity to earn in the future. The difference between the $6,000 she had begun to earn before the injuries and the $5,000 she was earning at the time of trial is not an exact measure of the impairment, but it does tend to support a substantial allowance.

In deciding motions after verdict, the trial court said, "The court believes that the damages awarded by the jury are not only not shocking but are in the realm of fairness." We agree.

*By the Court.*—Judgments affirmed.