ERDMANN, Respondent, v. WOLFE, Special Administratrix, and another, Appellants.

*January 6—February 2, 1960.*

For the appellants there were briefs by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *John C. Whitney*.

For the respondent there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan*.

FAIRCHILD, J.   Three questions are presented: (1) Was the $5,000 allowance for personal injuries excessive?  (2)

Did the county court correctly determine, as a matter of law, that Miss Erdmann was not causally negligent? (3) If not, is a new trial required?

1. *Damages.* Miss Erdmann testified that after the collision, she experienced terrible pain; that she was taken to the emergency room at the hospital in Sturgeon Bay, where Dr. Dorchester sewed up lacerations in her forehead, chin, and left knee. She was taken to her home in Green Bay the following day, and was in bed or on a couch there for a couple of weeks because she could not bend her leg. She could not bend her leg and support her weight for approximately a month. The trial took place some three years after the accident. At the time of trial, she still had some trouble climbing stairs, kneeling, stooping, bending, climbing hills, and walking for any length of time. Her knee hurts, throbs, and is unstable. She had gone to an orthopedic surgeon who gave her injections in her knee, and this helped to some extent. He sent her to a curative workshop, and prescribed exercises. For several months, she did an exercise daily in which she sat on the edge of the table, and lifted weights with her left foot. Her knee still makes a grinding noise. She had a two-inch, ugly, pink scar on her forehead which was unsightly and lasted for about a year, but was not very noticeable by the time of trial.

Dr. Dorchester testified that he had taken 16 stitches in her forehead, five under her chin, and five in her left knee. He did not see her again until just before the trial. He then examined her knee, and testified that the medial head of the gastrocnemius muscle was completely gone. The gastrocnemius muscle is on the back of the leg, just below the knee. Two heads of it are fastened to the femur, and with one gone, the muscle pulls unevenly. He testified that the muscle's function is to bend the knee. Under her right knee, he said that he could feel a well-developed medial head of

the gastrocnemius muscle, but on the left there was a hole under the skin where the muscle should be. He testified that this makes her knee less stable, and is a permanent condition. He was cross-examined to a considerable extent as to whether the hamstring tendons do not overlap the medial head of the gastrocnemius muscle so that it cannot be felt, but he insisted that it can.

Dr. Nellen, called as a witness on behalf of the defendants, testified that he had examined Miss Erdmann in 1956, and in 1958. His findings were essentially the same on both occasions. He found what he termed a minimal grinding of the left kneecap. He said that she has mild chondromalacia which is a roughening of the undersurface of the kneecap, and that this causes the grinding. He found that the circumference of both her knees was the same, but the circumference of her left thigh was one-half inch less than the right thigh. He said that because of the chondromalacia, she probably experienced pain and favored her left knee. This caused some atrophy of the muscles, resulting in the difference in measurement. Dr. Nellen testified that the chief function of the gastrocnemius muscle is to raise the heel; that it does have something to do with bending the knee, but that function is weak and secondary; that he did not believe it was possible to feel the head of the gastrocnemius muscle.

Defendants considered the $5,000 award for personal injuries excessive, and moved for a new trial upon that ground. They presented affidavits of orthopedic surgeons to the effect that the knee-bending function of the gastrocnemius muscle is comparatively insignificant, and that its medial head "is so deeply seated underneath tissue in the back of the knee and covered by the hamstring tendons that it cannot be manually felt by an examining physician." Affiants asserted that these facts are anatomical and physical truths generally accepted by the medical profession.

The county court denied the motion, saying—

"Neither could I say that the award is perverse if I concluded that some of the medical testimony was medically false. Virginia is twenty-seven years old. She is an athletic type of girl. She is a working girl. She was seriously injured. I can't conclude that the award of $5,000 is excessive."

The trial court saw and heard the witnesses and observed the injured party and had a better opportunity than we to determine whether the damages are excessive. *Korpela v. Redlin* (1958), 3 Wis. (2d) 591, 89 N. W. (2d) 305. The trial court approved this verdict. If we were to eliminate that part of Dr. Dorchester's testimony which is challenged as being contrary to anatomical facts, we still cannot say that the record does not support the award.

2. *The question of Miss Erdmann's causal negligence.* If this question can be decided in plaintiff's favor as a matter of law, the court correctly changed answers and awarded judgment for 100 per cent of the damages. Then there would apply the second rule stated in *State v. Pohl* (1954), 266 Wis. 23, 29, 62 N. W. (2d) 556, 63 N. W. (2d) 711.

Miss Erdmann testified in part that she saw Wolfe's car pull into her lane when the cars were five or six blocks apart, and she assumed that Wolfe was turning to his left. Wolfe then returned to his own lane, and she assumed that he had changed his mind. The Wolfe car continued some distance in its proper lane, and swerved into Miss Erdmann's lane when the cars were three or four car lengths apart. When Wolfe turned the first time, Miss Erdmann lifted her foot from the accelerator. When he turned into her lane the second time, she applied the brakes, but did not leave skid marks. She did not deviate from the middle of her own lane, did not blink her lights, or blow her horn. She claims that she did not have time to do any of these things after he came into her lane the second time, and claims that, as a

matter of law, she was free from negligence. Other parts of her testimony, however, would at least bear the interpretation that the Wolfe car was a considerable distance, perhaps several blocks, from the Erdmann car when it came into her lane of travel for the second time. We think it was for the jury to resolve these inconsistencies in her testimony, *Winston v. Weiner* (1958), 2 Wis. (2d) 584, 594, 87 N. W. (2d) 292; *Klabunde v. Emerling* (1959), 8 Wis. (2d) 472, 479, 99 N. W. (2d) 736; and that there was a jury issue whether the erratic course of the Wolfe car gave her sufficient notice so that she was causally negligent in not taking more precautions than she did. *Auster v. Zaspel* (1955), 270 Wis. 368, 71 N. W. (2d) 417; *Laughnan v. Aetna Casualty & Surety Co.* (1957), 1 Wis. (2d) 113, 83 N. W. (2d) 747; and *Zimmer v. Zimmer* (1959), 6 Wis. (2d) 427, 95 N. W. (2d) 438. By its answer to one question, the jury absolved Miss Erdmann from causal negligence, but in the answer to the comparison question the jury indicated that they considered her causally negligent. Because the jury had a right to find either way, the court was not entitled to resolve the inconsistency as a matter of law.

3. *Does the inconsistency require a new trial?* Plaintiff Erdmann moved for judgment on the verdict, but did not move for a change in the answers, or for a new trial. Statements of her counsel in the brief and oral argument upon appeal indicate that she would not desire a new trial for the purpose of attempting to establish that she is entitled to recover 100 per cent, rather than 95 per cent of the damages allowed. Defendants did not at first move for a new trial on the ground of inconsistency in the verdict, and their subsequent motion for a new trial on that ground appears to have been limited, perhaps inadvertently, to the action brought by the passengers. Rule (1) in *Statz v. Pohl, supra,* is as follows (p. 29):

"If the issue of causal negligence is for the jury and the party inquired about is exonerated but the jury in its comparison of negligence erroneously attributes to such party some degree of causal negligence, the verdict is inconsistent, and a new trial must be granted."

We think that this rule should be modified in a situation like the one before us. Where the verdict, because of the inconsistent answers, will not support a judgment for 100 per cent of the damages, but plaintiff prefers to take judgment for the amount which the verdict will support if the inconsistency be resolved against plaintiff, there is no sound reason for the delay and expense of a new trial merely to resolve the inconsistency. It does not seem that the defendants can legitimately complain if the inconsistency be resolved in their favor by giving full effect to the answer to the comparison question. Accordingly, the judgment appealed from is to be reduced by five per cent of the damages found.

*By the Court.*—Judgment reduced by $274.02 and, as so modified, affirmed. No costs are to be taxed to either party on this appeal.