Vogt, Plaintiff and Respondent, v. S. M. Byrne Construction Company, Defendant and Appellant: Motola, Impleaded Defendant and Respondent.*

*May 2—June 5, 1962.*

* Motion for rehearing denied, without costs, on October 2, 1962, Wilkie, J., taking no part.

For the appellant there was a brief by *Bender, Trump, Davidson & Godfrey,* attorneys, and *Kneeland A. Godfrey* of counsel, all of Milwaukee, and oral argument by *Kneeland A. Godfrey.*

For the plaintiff-respondent there was a brief by *Ray T. McCann,* attorney, and *Leonard L. Loeb* of counsel, both of Milwaukee, and oral argument by *Mr. Loeb.*

For the impleaded defendant-respondent there was a brief by *Rebholz & Duffey,* attorneys, and *Thomas J. Duffey* of counsel, all of Milwaukee, and oral argument by *Thomas J. Duffey.*

DIETERICH, J. This case involves a typical "do-it-yourself" project.

The testimony showed that the grinder was kept in an unused classroom in the school building, which room was used as a toolroom. On the morning of the accident, Mr. Byrne, president of Byrne Construction Company, arrived at St. Therese bringing a grinder (not involved in the accident), at the request of Father Wilwers, a priest of the parish. Byrne, his nephew Prasch, Father Wilwers, Motola, and others then went to the toolroom and removed a different grinder from a locked cabinet. This is the grinder involved in the accident. Upon inspection, Byrne decided that this grinder would not be usable as the emery wheel was badly worn. Father Wilwers then left and returned with two grinder wheels which the testimony reveals were obtained as army-surplus items. Byrne and Father Wilwers then took the lead core from the worn wheel and put it into the new wheel furnished by Father Wilwers in order to make this wheel fit the shaft of the grinder. Since the replacement wheel was too large, the safety shield had to be removed in order to accommodate it. Byrne testified that he then spun the wheel with his hand and said to those present that the wheel would not work, that it was not safe. Prasch's testimony agreed with that of Byrne. Prasch added that Father Wilwers also turned the wheel and that Father Wilwers and Byrne decided the wheel would not work as it did not fit properly. They all left the toolroom leaving the grinder on a bench in the room.

Frank Motola, who was also present, testified that he remembered no conversation by Byrne that the grinder would not work with the replacement wheel or that it was not safe. On cross-examination Motola admitted that though he was present when the conversation occurred, that he did not remember any of what had been said.

Father Wilwers was not called upon to testify and the plaintiff Vogt was not present when Byrne and Father Wilwers worked on the grinder in the toolroom.

Byrne Construction Company contends that under these facts it cannot be held to have entered a bailor-bailee relationship with St. Therese with regard to the grinder and that even if it is assumed Byrne was a gratuitous bailor, there was no breach of any duty to the plaintiff.

Restatement, 2 Torts, p. 1039, sec. 388, "Chattel Known to be Dangerous for Intended Use" provides:

"One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

"(b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

"(c) *fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so.*" (Emphasis supplied.)

The comment on clause (c) states in part as follows:

(p. 1048) "*j.* The supplier's duty is to exercise reasonable care to inform those for whose use the article is supplied of dangers which are peculiarly within his knowledge. If he has done so, he is not subject to liability, even though the information never reaches those for whose use the chattel is supplied. . . ."

(p. 1050) "*l.* . . . There is necessarily some chance that information given to the third person will not be communicated by him to those who are to use the chattel. This chance varies with the circumstances existing at the time the chattel is turned over to the third person, or permission is given to him to allow others to use it. These circumstances include the known or knowable character of the third person and may also include the purpose for which the chattel is

given. Modern life would be intolerable unless one were permitted to rely to a certain extent upon others doing what they normally do, particularly if it is their duty to do so. . . ."

St. Therese is a charitable corporation. Father Wilwers was, because of his position, a person of authority within the organization. As an agent of St. Therese he had called Byrne to bring a machine for grinding and had supplied the replacement grinding wheel. The uncontroverted evidence is that Byrne and Father Wilwers worked on the grinder together and that they concluded that unless the grinder had a better grinding wheel the grinder would not work; that it was unsafe. Under these circumstances the responsibility of using the grinder shifted to Father Wilwers.

The fact that Father Wilwers was not called upon by Vogt to testify corroborated the testimony given by Byrne and Prasch.

" 'The general rule is that the failure of a party to call a material witness within his control, or whom it would be more natural for such party to call than the opposing party, raises an inference against such party.' " *Coney v. Milwaukee & S. T. Corp.* (1959), 8 Wis. (2d) 520, 526, 99 N. W. (2d) 713.

See also *Rudy v. Chicago, M., St. P. & P. R. Co.* (1958), 5 Wis. (2d) 37, 92 N. W. (2d) 367.

Inasmuch as we determine that the evidence does not sustain the verdict, we find it unnecessary to discuss Byrne Construction Company's contentions with respect to contributory negligence and inadequate instructions to the jury.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the complaint.

The following opinion was filed October 2, 1962:

PER CURIAM (*on motion for rehearing*). We acknowledge that our original opinion requires modification in two respects, but we reach no different result.

We held, in substance, that as a matter of law, defendant had either denied permission to use the particular grinder or had exercised reasonable care to inform plaintiff and his co-workers that it was not safe. This was based upon Mr. Byrne's testimony, corroborated by Mr. Prasch, that Byrne "said to those present that the wheel would not work, that it was not safe."

We said:

"Frank Motola, who was also present, testified that he remembered no conversation by Byrne that the grinder would not work with the replacement wheel or that it was not safe. On cross-examination Motola admitted that though he was present when the conversation occurred, that he did not remember any of what had been said."

The statement just quoted is incomplete. Upon direct examination by plaintiff's counsel, Mr. Motola testified to statements made while Mr. Byrne and Father Wilwers were removing the old wheel and installing the second one on the grinder. He also testified as follows:

"*Q.* State whether or not at any time Mr. Byrne ever stated anything about the new wheel being unsafe? *A.* No. He never mentioned anything.
"*Q.* State whether or not at any time Mr. Byrne ever mentioned anything about this just being an experiment. *A.* He never said anything."

Defendant's cross-examination brought out no testimony inconsistent with the testimony just quoted.

Mr. Motola was also an impleaded defendant. Upon later direct examination by his own counsel he testified in part:

"*Q.* Did you hear Mr. Byrne make any statement to Father Wilwers regarding the grinding wheel not fitting or not rotating properly, and therefore, that it should not be used? *A.* Not that I recall."

Upon cross-examination by defendant's counsel he testified in part:

"*Q.* You recall any of the conversation that was had in the room there? *A.* No, I don't.

"*Q.* There were quite a few things said that you don't recall? *A.* Yes.

"*Q.* And Mr. Byrne said a number of things, and Father Wilwers said a number of things? *A.* Yes.

"*Q.* And those things you don't recall? *A.* No."

Had Mr. Motola's testimony remained unqualified as first given, there would have been a question for the jury to decide whether Byrne did or did not tell Father Wilwers and Motola that the grinder was unsafe. We conclude, however, that Motola's later testimony that he did not remember wholly destroyed the credibility of his earlier testimony. It follows that the jury verdict favorable to plaintiff was not supported by any credible evidence.

Our original opinion is qualified to conform to this memorandum.

We also said:

"The fact that Father Wilwers was not called upon by Vogt to testify corroborated the testimony given by Byrne and Prasch."

This was on the theory that it would be more natural for plaintiff to call Father Wilwers than for defendant to do so. Plaintiff was a parishioner of Father Wilwers but was not present at the time of the alleged statements by Byrne. Mr. Byrne had dealt directly with Father Wilwers in the matter of lending the grinder for use by the parishioners and claimed to have made the statement to Father Wilwers. Upon further consideration, we cannot say that it was more natural for plaintiff to call Father Wilwers than for defendant to do so. He was present at least for part of the trial and presumably available if either had called him. Furthermore, since we were concerned only with the question whether any evidence existed which would support the verdict, and not with the

weight of the evidence to the contrary, it was immaterial whether there was corroboration for the Byrne and Prasch testimony or not. The statement is withdrawn.

FAIRCHILD, J. (*dissenting*). It seems to me that the testimony of Motola, taken as a whole, is open to the interpretation that he was unable to recall the entire conversation, but was positive that Byrne had not said the wheel was unsafe. The decision as to the correct interpretation of it was for the jury.[1] If the jury understood Motola's testimony as just suggested, it could believe him and disbelieve Mr. Byrne and Mr. Prasch.

Although defendant was entitled, in my opinion, to reversal of the judgment against it and to a new trial because the special verdict did not contain the appropriate questions, I am satisfied that the evidence presented a jury question and that the complaint should not be dismissed.

[1] *Klabunde v. Emerling* (1959), 8 Wis. (2d) 472, 479, 99 N. W. (2d) 736; *Winston v. Weiner* (1958), 2 Wis. (2d) 584, 594, 87 N. W. (2d) 292.