Fairchild, J.
1. Error as to instructions. Plaintiffs contend the trial court erred in failing to give several requested instructions.
a. Applicability of rules of road to Youngman. Young-man was plowing a private drive and not the highway.[1] All parties appear to agree that Youngman was therefore not actually engaged in maintenance work upon a highway and that the rules of the road apply to him.[2] Plaintiffs requested an instruction so stating but the court refused to give it.
The court instructed the jury on the statutory duty of Youngman to yield the right-of-way if entering the highway as Dyer claimed, instructed on the duty of each driver with respect to lookout, instructed on the duty of each with respect to management and control, and on the statutory regulations of speed. These instructions were prefaced by the statement that there are—
“. . . rules of law as well as statutes enacted by the legislature for safe operation of vehicles on the highways. A *83 person who fails to comply with such rules or statutes is negligent as that term is used in the verdict and in the court’s instructions.”
There was no suggestion that the rules and statutory duties were less applicable to Youngman than to Dyer. We do not find that plaintiffs were prejudiced by the court’s refusal of the instruction requested.
b. Lighting. There was no issue as to the sufficient compliance by Dyer with the statutory requirement of headlights nor as to the sufficient compliance by Youngman with the special requirement of lights on road machinery. There was testimony that among other lights on the grader there was an amber floodlight on the right-hand side of the cab that “floods the machine.” This light was on although one blade of the grader was elevated so that it obstructed Dyer’s observation of the light. He testified that no lights were visible to him. The grader was painted yellow.
The court did instruct the jury as to the conditions under which high-beam and low-beam headlights are to be used and the intensity required of each headlight beam. He told the jury that there was no specific question as to the lights of either vehicle but that he was of the opinion that because of the issues, and particularly the arguments of counsel, the court should give this information. Dyer had testified that just before the collision, he had met westbound vehicles, had depressed his headlights, and had not had time to elevate them after the last car passed and before seeing the grader. Youngman denied the presence of westbound traffic. Presumably the court felt the jury should know the statutory standards for headlights because of this dispute and because of the fact that Dyer testified he first saw the grader at about 100 feet from- it. We do not find that plaintiffs were prejudiced by the giving of instructions as to headlight require *84 ments without giving the instruction as to the lighting requirements of road machinery.
c. Right-of-way. One of the disputes in the testimony was whether Youngman was entering the highway while Dyer was approaching. The jury apparently found that Youngman was out in the highway before Dyer approached. The trial court instructed the jury:
“. . . if you find that the snowplow driven by Charles J. Youngman was entering rather than leaving the highway, then it became the duty of the driver entering the highway to yield the right-of-way to the automobile on the highway.”
Plaintiffs requested that the jury be instructed:
“If at the time of impact, or immediately prior thereto, the county machine occupied any part of the right side of the roadway for eastbound traffic, including the plaintiff Lawrence Dyer’s, then the county machine violated the right-of-way afforded by the law to the plaintiff Lawrence Dyer.”
Sec. 346.05 (1), Stats., provides in part:
“Vehicles to be driven on right side of roadway; exceptions. (1) Upon all roadways of sufficient width the operator of a vehicle shall drive on the right half of the roadway and in the right-hand lane of a three-lane highway, except: . . .”
Plaintiffs seem to contend that the statute just quoted requires a driver (at least when not operating in a lane along a highway) to yield the right-of-way to any automobile driven on its right half of the roadway. The statute, however, does not say so. Undoubtedly a driver who finds it necessary to execute unusual maneuvers on a highway must exercise reasonable care to avoid endangering those who are using the highway in normal fashion. In the case before us Youngman’s duty in this respect was undoubtedly, considered *85 in answering the questions on lookout, and management and control.
A right-of-way exists when provided by statute.[3] Sec. 346.18 (4) requires the operator entering a highway from a point of access other than another highway to yield the right-of-way to all vehicles approaching on the highway he is entering. The jury found that Youngman did not violate this statute. Plaintiffs cite no other statute requiring a right-of-way which he may have violated.
d. Speed. The court instructed on the duty of a motorist in the nighttime to drive at such a rate of speed as will permit him to stop within the distance he can see ahead.[4] The court refused to give a requested instruction that the rule does not apply to situations where the obstruction although within the range of headlights may not reasonably be discovered because it blends with the color of the roadway or surroundings.
If it was error to omit the camouflage instruction, it would not be prejudicial since it would affect only one of the findings of negligence of the plaintiffs and there was no finding of negligence on the part of Youngman. Furthermore, although Dyer and his wife testified that the grader looked to them like a gray wall without contrast with the snowy background, the grader was yellow and it is not clear that the testimony of Mr. and Mrs. Dyer with respect to the way the grader looked to them is sufficient to entitle them to an instruction on camouflage as a matter of right.[5]
e. Lookout. The court referred to the subdivision of the special verdict inquiring whether Youngman and Dyer were negligent with respect to lookout. Then he instructed that it is the duty of every operator to exercise ordinary care, *86 to keep a careful lookout ahead and about him and to the rear if occasion requires. In the four succeeding paragraphs he instructed on various aspects of the duty of lookout owed by every driver. Then he gave an instruction which could have applied only to Youngman. It began, “Because of the preference the law gives to traffic on a through highway the duty of a driver entering upon a through highway as it is claimed by plaintiff that Charles Youngman was, with respect to lookout, requires . . . .” This instruction ended, “However this rule applies only in the event you find that the defendant Charles J. Youngman was entering rather than leaving the through highway.” Plaintiffs claim that the closing sentence informed the jury that if it accepted Young-man’s testimony he had no duty as to lookout. We think it clear from the instructions as a whole that Youngman had a duty at all times to keep a careful lookout and that the closing sentence just referred to would be understood as applying only to the detailed explanation of the duty of one who is in the process of entering a highway.
2. Negligence as a matter of law. Plaintiffs contend Youngman was negligent as a matter of law.
a. Management and control. Youngman saw the car 500 feet away. He then lowered the blade and proceeded ahead at one mile per hour. He chose the particular gear so that he would not damage the blade on rocks in -the driveway. He could have proceeded without lowering the blade and could have used a faster gear. But we think it was a jury question whether under all the circumstances he should have done so. His speed was sufficient so that by the time of impact the entire westbound lane and some portion of the eastbound lane were open. Evidently the jury did not believe Dyer’s testimony that westbound cars were present, and concluded that Youngman had no reason to believe that Dyer could not or would not see him in time to stop or pass behind the grader.
*87 b. Lookout. Youngman testified that he first saw plaintiffs when they were 500 feet away from the grader. The highway was straight and level, and there was testimony that lights could be seen for half a mile. Here again we think it was for the jury to consider the circumstances and determine whether Youngman’s failure to see the lights of the Dyer car earlier was negligence.
c. Right-oj-way. Plaintiffs concede that unless Young-man was entering the highway while they were approaching, there is no statute expressly providing that one in Young-man’s position must yield the right-of-way. There being a jury issue as to the movement being performed by Young-man, it cannot be said that Youngman was negligent in this respect as a matter of law.
3. Prejudice of the jury. Plaintiffs next contend that damages were so inadequate as to reflect prejudice on the part of the jury.
The jury awarded Lawrence Dyer $1,000 for his personal injuries (damages to his automobile and medical and hospital expenses for himself and wife having been found by the court). His injuries included a fracture of the upper third of the tibia, a fractured rib, and scalp laceration. He was in the hospital ten days, wore a hip-to-toe cast for fourteen weeks, and used crutches for four to five weeks thereafter. There was evidence of wage loss.
Jessie Dyer was awarded $500. Her jaw was fractured in two places, and this was treated by wiring her dentures and a plastic collar which she wore for eight weeks. She was hospitalized ten days. She had a fracture of the right clavicle and there was evidence of pain in her arm and shoulder. There was evidence of wage loss amounting to as much as $300. The circuit court denied plaintiffs’ motion for a new trial on the ground of perversity, saying:
“The damages found by the jury were low, very low, but they had found all of the questions with respect to negligence *88 in favor of the defendant and probably didn’t spend as much time on the damage questions as they could have, and con-cededly the damages were low, but not to the point where the court would say that it would indicate perversity.”
We agree that the damages were low but we find no reason to attach a greater significance to this fact than did the circuit court.
“While questions of this kind must be decided on their own facts, this court has held that when a jury has absolved a defendant of causal negligence, which finding is supported by credible evidence, the denial of damages or granting of inadequate damages to the plaintiff does not necessarily show prejudice or render the verdict perverse.” [6]
4. Discretionary reversal. Plaintiffs asked for a new trial in the interests of justice under our discretionary powers.[7] It appears to us that the first key issue before the jury was whether Youngman was just about to enter the highway as Dyer approached and therefore should have yielded the right-of-way. Once this issue was resolved in favor of Youngman, the second key issue was whether on the one hand Mr. Dyer should have seen the grader in time to stop, and on the other hand whether Youngman, under the circumstances, could properly rely to some degree on Dyer’s ability to see him. On motions after verdict, Judge Boileau expressed the opinion that the case presented questions for the jury and that the answers were justified from the evidence. Although the evidence could sustain a different result, we are not prepared to say that it appears probable that justice has miscarried.
By the Court. — Judgment affirmed.

 The parties stipulated in chambers that the county is compensated by the town for the type of plowing- operation Youngman was performing and that the town is compensated by the owner of the driveway.

 Sec. 346.02 (6), Stats.

 See Reynolds v. Madison Bus Co. (1947), 250 Wis. 294, 304, 26 N. W. (2d) 653.

 Wis J I — Civil, Part I, 1315.

 See Butts v. Ward (1938), 227 Wis. 387, 392, 279 N. W. 6.

 Dickman v. Schaeffer (1960), 10 Wis. (2d) 610, 617, 103 N. W. (2d) 922.

 Sec. 251.09, Stats.